## COMMONWEALTH v. BURDICK.

The false assertion of possession of money on the credit whereof goods were obtained, is a false pretence within the act of July 12th, 1842.

*Jan.* 19.—This was an indictment under the act July 12th, 1842, sect. 21, Pamphlet Laws 345, which provides, that "every person who, with intent to cheat or defraud another, shall designedly, by colour or any false token or writing, *or by any false pretence whatever*, obtain from any person any money, personal property, or other valuable things, shall, &c.;" and it alleged that the defendant falsely, &c., "pretended to, &c., that he possessed a capital of $8000; that said $8000 had come to him through his wife, it being her estate, and that a part of it had already come to his possession, a part would come into his possession in the month then next ensuing, and that the remaining part thereof he would be obliged to wait for a short time," which was false, and by which he obtained goods. The second count stated the same allegation as to possession, and the means of acquisition. The third, possession of the capital simply. Defendant demurred.

*F. Wharton* and *Attorney-general*, for the Commonwealth.—A similar question arose, under 30 Geo. 2, c. 29, to be found in 2 Russ. on Crimes, 284, 298, and seq., with an abstract of decisions thereon. There are also cases in our own country; People *v.* Kendal, 25 Wend. 399; assertion of ownership of a herd of cattle; People *v.* Conyer, 1 Wheel. Crim. Ca. 448; pretence of being a person of wealth, S. C. 14 Wend. 396. Their statute differs from ours merely in extending to the obtaining a signature. People *v.* Haines, 11 Wend. 557, supports this. Commonwealth *v.* Hutchinson, 1 Penna. Law Jour., pretence of wealth; nor have the judges been disinclined to enforce this rule of morality when sanctioned by the statute, Rex *v.* Young, 3 T. R. 98; Rex *v.* Barnard, 7 Carr. & Pay. 784, was a false token at common law; Rex *v.* Wickham, 1 Adol. & Ellis, 34. But the English cases under the statute above cited, which is identical, are full to the point; Rex *v.* Henderson, 1 Carr. & Marsh. 328, defendant to be worth a specific sum; Rex *v.* Young, 1 T. R. 104, promise to share a bet never made; Rex *v.* Wisemore, 1 T. R. 104; Rex *v.* Parker, 2 Moody, 1. The precedent is from 3 Chit. Crim. Law, 337; Arch. Crim. Pl. 275.

Defendant's counsel did not appear.

*Jan.* 31.   GIBSON, C. J.—The rule of the common law, that cheating in private transactions without affecting the public, must, to be indictable, have been effected by artful devices or false tokens, was found to be too narrow for the business of the world; and the English statute, 20 Geo. 2, c. 29, which has given place to the 7 Geo. 4, c. 92, sect. 53, was enacted to extend the limits of the offence.   From these our act of 1842, sect. 21, seems to have been taken, and decisions on the clause in the first, which declares it an indictable offence to get money, chattels, or securities, from another "by false pretence or pretences," or in the second, "by *any* false pretence," may advantageously be applied to cases here.   The distinctions taken, under these statutes, between cases sometimes differing in almost imperceptible degrees, are nice and well founded; and though not authoritative here, may help us in attaining a sound construction of our own statute, which differs from either of its models very little in substance or in form.   It would be a waste of time to pass those decisions in review, as they are collected and arranged in all the text books on criminal law; but it may be collected from them, that a professed intent to do an act which the party did not mean to do, as in Rex *v.* Goodall, Russel & Ryan, 461, and Rex *v.* Douglass, 1 Moody Cr. Ca. 462, is the only species of false pretence to gain property which is not indictable. These two cases, having been decided by the twelve judges, are eminently entitled to respect; but I think it, at least, doubtful whether a naked lie, by which credit has been gained, would not, in every case, be deemed within our statute, which declares it a cheat to obtain money or goods "by any false pretences *whatsoever*."   Its terms are certainly more emphatic than those of either of the English statutes; but whether a false pretence of mere intent be within them or *not, it is* certain that a fraudulent misrepresentation of the party's means and resources is within the English statutes, and a fortiori within our own. In Rex *v.* Jackson, 3 Camp. 370, it was held to be an offence to obtain goods by giving a check on a banker with whom the drawer kept no cash.   Of the same stamp is the King *v.* Parker, 2 Car. & P. 825; but Regina *v.* Henderson and another, 1 Car. & Marsh. 183, is still more to the purpose.   The prisoners falsely pretended that one of them was possessed of £12, which he agreed to give for his confederate's horse, for which it was proposed that the prosecutor should exchange his mare; and this was held to be clearly a false pretence within the statute.   Now the defendant is charged in the indictment before us, with having wilfully misrepresented that he had a capital of $8000, in right of his wife; that a part of it was already received; that another part would be received in the course of a month; and that the residue

*would* be received shortly afterwards: and if, as was said in Witchell's case, 2 East P. C. 80, a false pretence is within the English statute wherever it has been the efficient cause of obtaining credit, the false pretence before us is within our own.

Demurrer overruled, and judgment of respondeat ouster.