# Neall *versus* Hart *et al.*

1. In an action of trespass for false imprisonment against the prosecutor and a justice of the peace, the statements made to the justice by the prosecutor at the time he made his information and the warrant was issued, by which the justice was induced to issue the warrant, are relevant testimony to show probable cause for the prosecution, and in the absence of probable cause for the prosecution to disprove malice in fact, in mitigation of damages.

2. An information, charging that the defendant, "by misrepresentation and trickery, defrauded the prosecutor in the sale of curbing stone, and appropriated the same to his own use," is sufficient to authorize a justice of the peace in issuing a warrant for the arrest of the defendant.

3. Where there was testimony, that the defendant obtained the prosecutor's goods under the pretense of a contract, and through a lie, even though technically the defendant was not guilty of obtaining goods under false pretences, or of embezzlement, this is such probable cause for his prosecution, as will defeat a recovery in an action of trespass by him, against the prosecutor, and the justice of the peace who issued the warrant upon which he was arrested.

February 9th, 1887.　Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ.　PAXSON and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Chester County*: Of January Term, 1887, No. 64.

This was an action of trespass brought by James E. Neall against Albion W. Hart and Charles M. Griffith, to recover damages for his alleged illegal arrest and false imprisonment by them.　Plea not guilty.

The following are the facts of the case as they appeared on the trial before FUTHEY, P. J.

In May, 1886, James E. Neall, the plaintiff, the superintendent of the Pennsylvania Granite Co., purchased from Albion W. Hart, one of the defendants, a quantity of curbing stone. Having failed to pay for this curbing, Hart, on May 18, 1886, made complaint before Charles M. Griffith, the other defendant here, a justice of the peace, charging "that James E. Neall, by misrepresentation and trickery, has defrauded him in the sale of curbing stone, and has appropriated the same to his own use."　Upon this complaint the justice issued a warrant for the arrest of Neall.　The warrant charged Neall with "defrauding him (Hart) of moneys due for labor and stone."　On May 19, 1886, Neall was arrested and brought before Griffith, and in default of $400 bail was committed to the jail of Chester county.　The constable came to West Chester with Neall

[Neall *v.* Hart et al.]

and an application was made to the Court and Neall was discharged from custody about 9 o'clock in the evening, on the ground that the complaint and warrant charged no offence known to the criminal law.

Nothing further was done by Hart or Griffith in the matter. Neall then brought this action.

On the trial the defendants, Charles M. Griffith on the stand, offered to show the statements made by Hart to the witness, upon which he issued the warrant.

Objected to, as being irrelevant, the offence charged not being a crime at law, and it being immaterial whether there is probable cause or not, as it would not be justification. Objection overruled. Exception noted for plaintiff.

*A.* Mr. Hart stated to me that he had sold to Mr. Neall, who was the superintendent of the Pennsylvania Granite Company, a certain quantity of stone, which he was to be paid for; that he had sold this curbing to Mr. Neall, the superintendent, for 55 cents per foot, to be paid for as soon as it was loaded upon the cars at his quarry. I do not remember what number of feet it was, nor anything about it, further than the amount per foot, and that I remember distinctly; that the curbing had been shipped and had been sold; that the money had been put in Mr. Neall's pocket, and that he had never received a cent of it, and that there were rumors in the neighborhood that the company was selling or disposing of its property, which would thereby render it impossible for him ever to recover his money. He may have said considerably more than that, but I do not now particularly remember. (First assignment of error).

The defendants also offered to prove the price paid by the Pennsylvania Granite Co., for their property. Objected to, objection overruled, exception noted for plaintiff. (Second and third assignment of error).

The plaintiff presented *inter alia* the following points:

1. That the information and complaint which constitute the foundation of the present suit, charged before the justice of the peace against the plaintiff here, nothing but a simple trespass, in no way amenable to the criminal jurisdiction of the justice, nor cognizable at the Quarter Sessions, and all concerned in his imprisonment by virtue of the proceeding before the justice, were trespassers.

*A.* I instruct you that the papers in the case, viz.: the information, complaint, warrant and the commitment based upon them, constitute a criminal charge, and not merely a simple trespass. (Fourth assignment of error).

3. There is no sufficient evidence in this case to justify the jury in finding that there was probable cause for the arrest of the plaintiff, and the imprisonment complained of by him.

[Neall *v.* Hart et al.]

*A.* I instruct you that there is evidence on this point for your consideration, and that evidence I have submitted to you. (Fifth assignment of error).

5. Under all the evidence the verdict must be for the plaintiff, and the only question for the jury to consider is the amount of damages which may be recovered.

*A.* This point is disaffirmed. It is the duty of the jury to determine how the verdict shall be under the instructions they have received from the court. (Sixth assignment of error).

In the general charge the court instructed the jury *inter alia* as follows:

The foundation of the present action is that Squire Griffith had no authority to issue a warrant for the arrest of the plaintiff. It is admitted as being the law that, if the justice acted within his jurisdiction, he is not liable, unless malice should appear. There is no evidence in the case that would impute dishonest or wrongful motives on the part of either the justice or the prosecutor. The justice appears to have fairly and deliberately heard the case, and determined it according to the best of his judgment.

The question therefore resolves itself into one of jurisdiction. If it is shown that the justice had jurisdiction of the matter the plaintiff cannot recover.

Justices of the peace are entrusted with certain duties of a limited character, and, in viewing their proceedings, it is well perhaps not to be too hypercritical. In this case it appears that Albion Hart made certain statements to the justice, constituting what is termed the information that upon this information, the justice issued the warrant of arrest, held the hearing, and, in default of bail, committed the plaintiff to jail.

The language of the affirmation made by Hart is that "James E. Neall, by misrepresentation and trickery has defrauded me in the sale of curbing stone and appropriated the same to his own use."

The language of the warrant, based upon this affirmation, is not quite as full as that of the affirmation itself, but the two papers must be taken together in order to clearly understand the nature of the case that was heard by the justice.

The commitment of the justice has not been produced, but in its absence, the presumption arises that it substantially followed the language of the statement given to the justice, upon which the information was based, and that the plaintiff was committed for the offence therein charged against him.

These papers are not drawn with the skill of a lawyer, or one especially familiar with such matters, but, after a careful examination, I instruct you that they substantially charge an

offence against the criminal law; that [a fair reading of these papers does charge a crime against James E. Neall—the offence of obtaining possession of the property of Albion Hart by means of false pretences; that he appropriated the proceeds of the same to his own use, and that a fair reading also charges him with embezzling moneys belonging to Albion Hart, one of the defendants in this action]. (Seventh assignment of error).

It does not follow, however, because these papers charge an offence against the criminal law, that the justice had jurisdiction of the offence. It may happen that, while a party is charged before the justice with larceny, yet at the hearing, larceny may not be shown, but that the action ought to be simply one to recover a debt, in which event the charge of larceny would not entitle the justice to assume jurisdiction.

It is necessary, therefore, to examine the facts of the case, in order to determine whether the justice had jurisdiction of the offence charged against James E. Neall. The question is not whether he was guilty of the offence charged, but simply whether the statement of Albion Hart was sufficient to warrant the information being made, holding the hearing and the commitment by the justice. It is not important to consider whether Neall might have been acquitted if placed on trial for the offence charged, because that possibility would depend not only upon the testimony of the Commonwealth, but upon that of the defendant. There are many instances of acquittals in courts, in which it could not be said that the prosecutor and the justice were liable to an action for false imprisonment.

It appears from the evidence that James E. Neall, or the Penna. Granite Company, of which he was superintendent, had entered into contracts for furnishing curbing to parties in Philadelphia; that Albion Hart, having a quantity of material ready for the market, was persuaded by Mr. Morgan to sell it to Neall, and that pending the negotiations, conversations relative to the sale occurred between the three parties; that Mr. Hart being in need of money, finally agreed to accept 55 cents per foot for the curbing, in accordance with Mr. Morgan's advice, and that payment was to be made when the stone was loaded on the car; that Mr. Hart delivered the stone, in accordance with his contract, and so notified Mr. Neall; that he then demanded payment and was informed by Mr. Neall that he would pay him the next day.

The stone was shipped to Philadelphia, and the plaintiff testified that he again demanded payment, and that the reason Mr. Neall assigned for not paying him was that he had not received the money; that payment continued to be deferred upon

[Neall v. Hart et al.]

that ground, and that finally he learned from the Company in Philadelphia, that Mr. Neall had received the money, when he again demanded payment from him, but was ordered off the premises and told to get the money the best way he could do so.

It is your duty to consider the circumstances under which this stone was purchased. [Was it a mere debt? If a mere debt was incurred by Mr. Neall, or the company he represented, the justice would have had no authority to institute a criminal proceeding. It becomes important to ascertain whether the stone was taken away before Mr. Neall complied with his part of the contract, in respect to the payment in cash. If it was, then it was removed against the will of Mr. Hart, and would be a misappropriation of his property;] (eighth assignment of error) but if not, and the agreement was that it should be paid for at some future time, the relation of creditor and debtor was simply established between the parties, and it would not have been a mis-appropriation of Mr. Hart's property.

The stone belonging to Mr. Hart was shipped to Philadelphia, and subsequently sold with other property belonging to the Penna. Granite Company. Mr. Hart testified that he repeatedly asked Mr. Neall for payment, but that the reply always was that he had not received the money.

You will determine whether the fact stated by Neall that he had not received the money from the sale of the stone is of any importance, if you believe Hart's testimony. that the payment was to be cash on the delivery of the stone.

If you find that Neall did receive the money from the company, the question arises as to whom it belonged. [Whose money was it? Was it Mr. Hart's money he received? If it was Hart's money that Neall received from the company, and refused to pay to Hart, when Hart learned the fact of its receipt and demanded payment, then Neall would be guilty of embezzling money to which Hart was entitled.] (Ninth assignment of error.)

You will therefore determine from the evidence in the case whether the relation of creditor and debtor existed between the parties, or whether the criminal law was violated. In order to ascertain this fact, you will, ascertain whether Mr. Neall removed Hart's property contrary to the provision of their agreement, that it was to be paid for in cash on delivery. If so, the stone still remained Hart's property, and the proceeds of its sale, when received by Neall, should have been paid to Hart; and, under these circumstances failing to make the necessary payment, Neall would render himself liable to a prosecution for embezzlement.

[Neall *v.* Hart et al.]

[In this view of the case, the next question for you to determine is whether there were such circumstances surrounding the transaction as warranted the prosecutor in making the complaint, and the justice in issuing the warrant of arrest, thus placing the plaintiff in the position of a criminal.] (Tenth assignment of error.)

In cases where the facts are not disputed, the court determines whether they are sufficient to constitute probable cause; but where the facts are in dispute, it is the duty of the jury to ascertain what the facts are, and then the court decides whether or not, under a given state of facts, probable cause is shown to have existed at the time of the arrest.

I instruct you, that if you find the stone was sold to the Penna. Granite Company, or Mr. Neall, as its representative, or individually, and the relation of creditor and deotor was created between the parties, the action would have been simply on a debt, and the justice would have had no jurisdiction to entertain criminal proceedings against Mr. Neall; [but if you find that the stone was to be paid for in cash, and that it was removed without payment being made, the stone, or its proceeds, still remained the property of Mr. Hart, and if the money was received by Neall and not paid to Mr. Hart, then the prosecutor was warranted in making the complaint, and the justice authorized to issue the process and hold Neall for trial in default of bail.] (Eleventh assignment of error.)

The question as to whether Neall could have been convicted on the charge in court is not material; because juries decide the guilt of a defendant from all the evidence in the case, and a defendant may be acquitted, although there may be ample evidence to justify a prosecution.

The jurisdiction of the justice is the only question involved in the case. If it was simply a debt between the parties, the justice would have had no jurisdiction to institute a criminal proceeding. If he did so, under such circumstances, he would be a trespasser in law, and those who made the complaint would be placed in the same position. If, however, it was a case where the criminal law had been violated, so far as it could be made *prima facie* to appear, neither the prosecutor nor justice could be held liable to damages in an action for false imprisonment, and there would be nothing in the case to warrant the conclusion that they had acted in a wanton or wrongful manner.

This is the case you have been called to try. It is simply a question of jurisdiction. If the justice had no jurisdiction, under the principles of law, as I have explained them, the plaintiff is entitled to recover. [If you find the facts to be as I have stated the defendants contend, I instruct you that there

[Neall v. Hart et al.]

was probable cause for the prosecution, and the plaintiff cannot recover.]    (Twelfth assignment of error.)

In cases of this kind, the damages are compensatory, or such as will compensate the plaintiff for any loss he may have sustained; nominal damages, for some trifling sum, and exemplary damages, which are usually given for the purpose of setting an example to others. [If you render a verdict in favor of the plaintiff, there is no evidence to warrant your giving him exemplary damages.] (Thirteenth assignment of error.) The circumstances, as developed by the evidence, would warrant simply either nominal or compensatory damages, but ordinarily compensatory damages are allowed in such cases.

*R. Jones Monaghan* (*John Sparhawk, Jr.*, and *J. Frank E. Hause* with him), for plaintiff in error.

(1.) Trespass is the proper remedy where an arrest has been made on a warrant which charges no crime: Maher v. Ashmead, 6 Casey, 344; Baird v. Householder, 8 Id., 168; Kramer v. Lott, 14 Wright, 495.

"The principle of the rule is that the warrant is void, no crime existing to give it legality, and that an arrest under it is no more to be justified than any other illegal arrest and detention without a warrant. Trespass in such a case is undoubtedly the remedy:" Kramer v. Lott, 14 Wright, 496.

(2.) The distinction is between irregular process, or that which is absolutely void, and process erroneously issued, but not void: 1 Waterman on Trespass, § 307.

(3.) A justice of the peace and his jurisdiction are creatures of statute. A justice's court is not one of general, but of special and limited jurisdiction.

In such case there are no presumptions in favor of jurisdiction, but such jurisdiction must appear on the record: 1 Waterman on Trespass, §§ 54, 56, 359.

(4.) Every person who interferes with the liberty or property of another is *prima facie* a trespasser, and is liable to an action unless he can show legal justification for his act: Dicey on Parties, 450; Baird v. Householder, 8 Casey, 169; 1 Waterman on Trespass, §§ 57, 362, 364; 3 Wait's Act. & Def., 316; Hill v. Bateman, 1 Strange, 711.

(6.) The defendant, Hart, is clearly liable as well as the justice: Parsons v. Lloyd, 2 Wm. Bl., 845; 1 Waterman on Trespass, § 302; Bigelow's L. Cases on Torts, 279; 1 Smith's L. Cases, 557.

(7.) Neither the information, warrant nor evidence disclose a case amenable to the criminal law pending before the justice when the arrest and imprisonment occurred.

The whole proceeding was therefore absolutely illegal and void and amounted to a trespass as pure and simple as· if the so-called warrant had been signed by one of the counsel arguing this case instead of Justice Griffith.

*Charles H. Pennypacker* and *D. Smith Talbot*, for defendants in error.—The question as to what occurred at the office of the justice was an important one. The statements of the parties were essential to an understanding of the case. Their intent and meaning may not be clearly expressed in the papers, but, taken with them, they import an offence against the criminal law, of which the justice had jurisdiction. An offence was substantially charged upon the face of the papers. A failure to sustain the charge upon a hearing had does not render the defendants liable, as Justice GORDON well says, in Gilliford *v.* Windel, 12 Outerbridge, page 145: As it is the duty of every citizen to aid in enforcing the criminal laws of the state against those by whom they are willfully disobeyed, so it is the business of our courts of justice to see that the person thus undertaking to vindicate the law shall not suffer in consequence of such an attempt, even though it may have proved abortive. So where it appears that the defendant acted merely through mistake, or where the prosecution resulted from the mistake of the justice of the peace before whom the information was made, the action cannot be maintained.

In McCarthy *v.* DeArmit, 3d Outerbridge, page 70, Justice TRUNKEY clearly says: The law favors honest efforts to bring the guilty to justice, and where a citizen proceeds by complaint before a magistrate, though the prosecution be unwarranted in fact, if his motives were pure he will be protected.

Mr. Justice GORDON delivered the opinion of the court, March 14th, 1887.

Several exceptions were taken to the rulings of the court below on the admission and rejection of evidence, and are here now assigned for error. We cannot sustain them. "The gist of false imprisonment is unlawful detention, and the general rule is that malice will be inferred from the want of probable cause, so far at least as to sustain the action:" Mr. Justice TRUNKEY, in McCarthy *v.* De Armit, 99 Pa., 63. From what is here said, it is obvious that Neall's action was open to defeat by proof of probable cause for the prosecution, and further that, even in the absence of probable cause, it was important to disprove malice in fact, and that if for no other purpose than in mitigation of damages, Hence, the statements made to the justice by the prosecutor, and by which he was induced to issue the warrant, were relevant. As to the assign-

[Neall v. Hart et al.]

ments embracing the rejected offers, inasmuch as we cannot perceive how the price paid by the granite company for its property could possibly affect the case trying, we cannot sustain them. The remaining exceptions relate to the charge of the court, and its answers to the points, and, though numerous, may all be considered under two general heads.

1. Was the court right when it said to the jury, "The next question for you to determine is whether there were such circumstances surrounding the transaction as warranted the prosecutor in making the complaint to the justice in issuing the warrant of arrest, thus placing the plaintiff in the position of a criminal"? We are constrained to answer this interrogatory in the affirmative. A justice of the peace is not to be presumed to be learned in legal technicalities, hence, if the information set out a cheat of any kind, it was sufficient on which to ground a warrant. But that information alleged that James E. Neall by misrepresentation and trickery has defrauded me in the sale of curbing, and has appropriated the same to his own use." This charge, as here set forth, is not very definite, forasmuch as it is difficult to say whether it was intended to charge embezzlement, or obtaining goods on false pretences, but, that a cheat of some kind is thereby charged, no one, we think, will deny, and, if so, it was sufficient to warrant the justice's action, and it was the business of the prosecuting officer, when the case reached his hands, to determine what should be the character of the indictment.

2. Was the court right in its instruction to the jury that, if the stones were to be paid for in cash before removal, they continued the property of Hart, though Neall had possessed himself of them, and their sale by the latter, and appropriation of the money arising therefrom to his own use, would constitute such a fraud as justified Hart in making the complaint on which the warrant issued? This in effect raises the question of probable cause which, as we think, was properly submitted.

If the testimony of Hart and J. W. Morgan is to be believed, there was such cause for the prosecution if nothing more. The plaintiff obtained a delivery of the curbing on the cars under a contract to pay when so delivered, and then, taking advantage of the defendant's performance, he shipped the curbing to market, under the pretence that he would pay the next day, but, instead of so doing, he sold the curbing, and refused payment altogether. Let it be that this was not embezzlement in its technical sense, yet were the prosecutor's goods gotten under pretence of a contract and through a lie. In the case of the Commonwealth v. Burdick, 2 Pa., 163, Mr. Chief Justice GIBSON makes use of the following language:

" But I think it at least doubtful whether a naked lie, by which credit has been gained, would not, in every case, be deemed within our statute, which declares it a cheat to obtain money or goods 'by any false pretences whatsoever.' " If, then, so great a jurist as the one cited was inclined to the opinion that a deliberate lie would support an indictment charging a false pretence under our statute, we may well excuse a layman' and a country justice for coming to a like conclusion. In other words, on the strength of such authority, we may well conclude that Hart and Griffith had probable, if not actual, cause for what they did.

The judgment is affirmed.