## THE AETNA INSURANCE COMPANY
*vs.*
## MOSES BLUMENTHAL ET AL.

Court of Common Pleas   New London County   File No. 9134

## MEMORANDUM FILED MARCH 30, 1942.

*Goldstein & Bracken,* of New Haven, for the Plaintiff.

*Samuel I. Safenovitz,* of Norwich, for the Defendant, Moses Blumenthal, and *Brown & James,* of Norwich, for the Defendants, George H. Hoxie and Lawrence Cook.

WALLER, J. This is an action in which the plaintiff seeks to recover damages from the several defendants for the alleged escape of one Basson from the New London County Jail at New London, where he was held on civil process. The plaintiff alleges that the defendant Moses Blumenthal, as justice of the peace, wrongfully administered the poor debtor's oath to said Basson, and illegally released and discharged said Basson, and that the defendants George H. Hoxie, 2nd, as sheriff and jailer, and Lawrence Cook, as deputy sheriff and jailer, illegally released and discharged said Basson and permitted him to escape from the confines of said jail.

The plaintiff claims that the defendant Moses Blumenthal, in administering the oath to said Basson and in discharging him, is liable in damages because: (1) he had no jurisdiction of the plaintiff as service of the notice of the hearing was not made upon the plaintiff four days inclusive before the day set for the hearing: and (2) he did not delay for one hour after the hour set for the hearing before issuing the certificate and discharging said Basson.

A justice of the peace, in disposing of any cause, civil or criminal, when he has jurisdiction of the subject matter, process, and person, holds a court of record and acts as a judicial officer. As such, he is entitled to the same immunities from civil liability for his judgments which belong to judges of any higher court. *McVeigh vs. Ripley,* 77 Conn. 136, 139.

Under section 2027 of the General Statutes, Revision of 1930, a justice of the peace has general jurisdiction to administer the poor debtor's oath in proceedings taken in strict conformity with the statutory requirements. *Anderson vs. Dewey*, 91 Conn. 510, 511. While the mere administration of the poor debtor's oath is a ministerial act, the inquiry into the matter, and the determination that "no sufficient reason is shown" why the oath should not be administered, are exercises of the judicial function. *Anderson vs. Dewey, supra*, p. 512. The defendant Blumenthal, when the application was made to him as a justice of the peace, had general jurisdiction of the subject matter. His acts as such justice of the peace in issuing the notice and citation to the judgment creditor were in conformity with the provisions of the statute as to notice. It is true that the citation did not specifically direct the service of notice to be made "four days inclusive" before the day set for the hearing, but that did not of itself make the citation defective. It does appear, however, that while the notice was served upon the attorney for the judgment creditor four days inclusive before the hearing, service was made upon the judgment creditor only three days inclusive before the hearing.

The time set for the hearing was at one o'clock in the afternoon of February 20, 1941. The defendant justice did not wait for one hour, but at one-thirty o'clock, the judgment creditor not then having appeared, the justice examined Basson, administered the oath, and ordered his discharge. The attorney for the judgment creditor arrived at the place for hearing at one forty-five o'clock, after the proceedings had ended. If service of the notice had been duly made, the justice would have had jurisdiction of both the subject matter and of the person, notwithstanding his failure to wait one hour before disposing of the matter, though his failure so to do would make the proceedings voidable. *Burgess vs. Tweedy*, 16 Conn. 39. The act of its attorney in filing notice of appeal with the jailer some two hours after the hearing, which attempt to appeal was later abandoned, did not, under the circumstances, amount to a waiver of the defective service and failure to wait one hour.

It is universally accepted law that a justice of the peace, as well as a judge of any higher court, when he acts fully within his jurisdiction—that is, when he has jurisdiction of the subject matter and has acquired jurisdiction of the person

in the particular case—is not liable for acts done in the case, no matter how erroneous they may be; and on the other hand, he is civilly liable when he acts wholly without jurisdiction of the subject matter, the process, and the person. The liability of the defendant Blumenthal therefore rests upon the determination of the question whether a justice of the peace can be held personally liable on a judgment or order where he has general jurisdiction of the subject matter, but erroneously decides that he has jurisdiction of the person. It is clear that in such a situation, a judge of a Superior Court is protected by the general rule which is stated in 30 *Am. Jur. Judges* §48: "As a general rule, where jurisdiction over the subject matter is invested by law in the judge, or in the court which he holds, the manner in which and the extent to which the jurisdiction shall be exercised are as much questions for his determination as any other questions involved in the case, although the validity of his judgments may depend on the correctness of his determination in these particulars, and he is not liable for acts done pursuant to an erroneous decision that he has jurisdiction in the particular case."

This rule is stated in 25 *C.J. False Imprisonment* §98, as follows: "A judicial officer is not liable for acts done in his judicial capacity where there is not a clear absence of all jurisdiction over the subject matter and person, even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the officer had jurisdiction over the particular case when in fact he had none." *Bradley vs. Fisher*, 13 Wall. 335, 20 L. ed. 646; *Kittler vs. Kelsch*, 56 N.D. 227, 216 N.W. 898, 56 A.L.R. 1217; *Broom vs. Douglass*, 175 Ala. 268, 57 So. 860; *Sweeney vs. Young*, 82 N.H. 159, 131 Atl. 155.

As pointed out in *Sweeney vs. Young, supra* (p. 163 of vol. 82 N.H.): "When the officer makes an erroneous preliminary decision that he has jurisdiction and then acts in pursuance of the error, liability depends upon his right to pass upon the jurisdictional question. If he goes outside his general authority, he is not protected for the consequences of his action. If within his general authority his erroneous exercise of it is due to special reasons of jurisdictional invalidity, he is protected. In the one case he is not called upon to act, in the other he is."

In *Lange vs. Benedict*, 73 N.Y. 12, 33, it is said: "Where

jurisdiction over the subject is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other involved in the case; although upon the correctness of his determination in those particulars, the validity of his judgment may depend....For such an act, a person acting as judge therein is not liable to civil or criminal action. The power to decide protects, though the decision be erroneous."

In the same case (p. 35) the court quotes with approval from *Savacool vs. Boughton,* 5 Wend. (N.Y.) 172: "Many cases are to be found wherein it is stated generally that when an inferior court exceeds its jurisdiction its proceedings are entirely **void, and afford no protection to the** court, the party, or the officer who executes its process. I apprehend that it should be qualified when the subject-matter of the suit is within the jurisdiction of the court, and the alleged defect of jurisdiction arises from some other cause."

In commenting on the liability of a justice of the peace for his judicial acts, it is stated in 31 *Am. Jur. Justices of the Peace* §20: "Among the earlier cases, there was a tendency to make a distinction between the liability of judges of superior courts and judges of inferior courts, including justices of the peace. But the distinction was never universally adopted and has been rejected by most, if not all, the modern authorities." And see cases cited in footnote to above-quoted section.

In *Shaw vs. Moon,* 117 Or. 558, 562, 245 Pac. 318, 319, 45 A.L.R. 600, 602, in support of the rule abolishing any distinction between the liabilities of judges of superior and inferior courts, it is said: "Some authorities, in similar actions, distinguish between courts of limited and those of general jurisdiction, but the trend of modern authority is breaking down such distinction, and rightfully so. It is difficult to understand why we should hold liable a justice of the peace for blundering in the law and exempt for the same offense those occupying higher judicial positions. As a matter of abstract justice and common sense, it would seem that those who speak the final word should at least be held to the same degree of accountability. So far as civil liability for judicial acts is concerned, we think judges of courts of limited and those of general jurisdiction stand upon the same plane: *Rush vs. Buckley,* 100 Me. 322 (61 Atl. 774, 4 Ann. Cas. 318, 70

L.R.A. 464); *Thompson vs. Jackson,* 93 Iowa 376 (61 N.W. 1004, 27 L.R.A. 92); *Calhoun vs. Little,* 106 Ga. 336 (32 S.E. 86, 71 Am. St. Rep. 254, 43 L.R.A. 630); *Broom vs. Douglas[s],* 175 Ala. 268 (57 South. 860, Ann. Cas. 1914C, 1155, 44 L.R.A. (N.S.) 164); 15 R.C.L. 548; 25 C.J. 516."

In *Thompson vs. Jackson,* cited *supra,* in refusing to adopt this distinction, the court said (p. 385 of vol. 93 Iowa): "We might cite many other protests and criticisms by courts and text writers condemning the rule, but it is not necessary to do so. The current of legal thought is that the distinction is unreasonable, unjust, illogical, and ought not to obtain."

And in *McCall vs. Cohen,* 16 S.C. 445, 450, 42 Am. Rep. 641, the court said: "Trial Justice Huggins had jurisdiction of the subject-matter in which he rendered that judgment, although, the parties not being properly before him, it was in fact not a legal judgment. He was not acting beyond his jurisdiction, but he erred in supposing that he had acquired jurisdiction of the persons of the defendants when he had not. Having jurisdiction of the subject-matter, whether he had jurisdiction of the defendants was a matter for his own determination, although he might and did decide that question wrong."

In 31 *Am. Jur. Justice of the Peace* §24, it is said: "Where a justice of the peace acts judicially with respect to a subject matter of which he has a general jurisdiction, but in the particular case he has acquired no jurisdiction of the person affected, he is not liable if the act involves his present or previous affirmative decision that he has jurisdiction of such person and authority to proceed in the particular case, provided a colorable case has been presented to him which fairly calls for or permits the exercise of his judgment with respect thereto, and provided he has determined in good faith, without malice or corruption, that the case presented calls for the exercise of his general jurisdiction." Among the cases cited in support of this proposition are: *Broom vs. Douglass,* 175 Ala. 268, 57 So. 860; *Gardner vs. Couch,* 137 Mich. 358, 100 N.W. 673; *Grove vs. Van Duyn,* 44 N.J.L. 654; *Austin vs. Vrooman,* 128 N.Y. 229, 28 N.E. 477; *Neall vs. Hart,* 115 Pa. 347, 8 Atl. 628. *See, also,* 15 R.C.L. *Judges* §33; *Robertson vs. Parker,* 99 Wis. 652, 657, 75 N.W. 423, 424; *Langen vs. Borkowski,* 188 Wis. 277, 206 N.W. 181, 43 A.L.R. 622; *McNair's Petition,* 324 Pa. 48, 187 Atl. 498, 106 A.L.R. 1373.

In the leading case of *Grove vs. Van Duyn, supra,* the court said (p. 660): "Where the judge is called upon by the facts. before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable in a suit to the person affected by his decision, whether such decision be right or wrong. But when no facts are present, or only such facts as have neither legal value nor color of legal value in the affair, then, in that event, for the magistrate to take jurisdiction is not, in any manner, the performance of a judicial act, but simply the commission of an unofficial wrong. This criterion seems a reasonable one; it protects a judge against the consequences of every error of judgment, but it leaves him answerable for the commission of wrong that is practically wilful; such protection is necessary to the independence and usefulness of the judicial officer, and such responsibility is important to guard the citizen against official oppression." In applying this principle in the later case of *Smith vs. Hibler,* —N.J.—, 92 Atl. 364, the court said: "The complaint in the case is based upon the allegation that the justice was without jurisdiction to issue the capias. Whatever may be the fact in that regard, it must be manifest that he had at least a colorable jurisdiction to adopt that procedure; and, such being the legal status, he is immune from a suit at law for false imprisonment, even though he was in error in failing to observe the technical and correct course of legal procedure in asserting his jurisdiction."

There appears to be no case in Connecticut where the decision turned upon the precise question involved in this case. There are general statements in some cases that a justice of the peace may be held liable for any action in a matter in which he did not have jurisdiction of the subject matter, the parties, and the process. In the more recent cases of *Case vs. Bush,* 93 Conn. 550 and *McVeigh vs. Ripley,* 77 id. 136, the former involving a judge of probate and the latter a justice of the peace, it appears in each case the judge or justice had jurisdiction of the subject matter, process, and parties. Most of the early Connecticut cases wherein a justice of the peace or other officer exercising judicial functions was held liable, were in the nature of trespass or false imprisonment, and the decisions for the most part rested upon the irregularity of the process in question.

In *Grumon vs. Raymond,* 1 Conn. 40, there was arrest on a warrant issued by the justice which was held to be process over

which he had no jurisdiction. The court further held that the justice never had any jurisdiction of the subject matter. In disposing of the question, the court, by Chief Justice Reeve, said (p. 45): "Should it be asked, if a justice issues a warrant which has some defect in it, so that the person arrested cannot be held by it, is the justice liable? I answer, he is not, if he aims at issuing a process which the law recognizes, and fails through some oversight or mistake. If he should attempt to issue an attachment against the goods, estate or person of a debtor, and direct the officer for want of property to take the debtor, and have him before the court, etc., and it should be so defective as to abate, the justice would not be liable; for he had jurisdiction over that kind of process which he issued. But if he should direct the officer, for want of property, to take the body of the debtor, and put him in irons, and confine him in Newgate, he would be liable; for the law knows of no such process."

In Burlingham vs. Wylee, 2 Root 152, the justice issued a capias to take the body of the plaintiff and deliver him to the town sergeant at Hopkinton, Rhode Island, over the line of the State, which it was held, he had no right by law to do. The court, however, said (p. 153): "Yet, if the justice's jurisdiction in matters of this nature had been general, and this had been only an erroneous exercise of his power, he would not have been liable in damages."

In Tracy vs. Williams, 4 Conn. 107, the plaintiff was arrested by the justice "on his own view" and imprisoned without complaint or hearing. This was held to be wholly extrajudicial and irregular, and the justice held liable for false imprisonment.

In Allen vs. Gray, 11 Conn. 95, the process was issued by the justice without complaint, and it was held the proceedings were void and the defendant justice liable in trespass. In disposing of the case, the court said (p. 102): "It has, indeed, been said, that if the defendants are liable in this case, a magistrate may be subjected in every case where the complaint on which he acts is insufficient. This consequence by no means follows.—The distinction is between erroneous and irregular process. It surely was never supposed, that a judicial officer was liable for an error in judgment; and on a process merely erroneous, nobody is liable. But if the process be irregular, there is no judgment, because there is no jurisdiction and no judge."

In *Church vs. Pearne,* 75 Conn. 350, it appears the justice of the peace attempted to punish the plaintiff for acts of contempt not committed in his presence without written charges of which the plaintiff had reasonable notice. It was held that the procedure was in violation of sections 8, 9, and 10 of Article I of our Constitution, and the court said (p. 355): "The absence of such charges, preferred on oath or affirmation, went to the jurisdiction of the court. Assuming that there was jurisdiction over the subject-matter, and a right to issue a warrant for the plaintiff's arrest, there was no jurisdiction of the cause, that is, of the proceedings for contempt, for want of an essential prerequisite, namely, probable cause shown by oath or affirmation, before the issue of the warrant. *Grumon* vs. *Raymond,* 1 Conn. 40, 47; *Allen* vs. *Gray,* 11 id. 95, 102. This violation of the constitutional rights of the defendant deprived the warrant of the character of legal process."

It seems that the case of *Church vs. Pearne, supra* (on which the plaintiff relies) as well as the cases of *Grumon vs. Raymond,* 1 Conn. 40, and *Allen vs. Gray,* 11 id. 95, are clearly distinguishable in that in each of these cases the court specifically points out that the process was irregular and not erroneous, and therefore there was no judgment because there was no jurisdiction and no judge.

In the present case, the defendant Blumenthal had general jurisdiction over the subject matter and, so far as appears, he acted in good faith, without malice, in determining that due service had been made upon the judgment creditor, and that consequently he had acquired sufficient jurisdiction of the person to justify the administration of the oath to Basson and the direction to the jailer to discharge him. While his decision as to jurisdiction of the person was erroneous, there appears to have been sufficient foundation for the claim that the facts before him had legal value or at least color of legal value on the question. Under the circumstances, and in view of what appears to be the weight of modern authority as to the rule to be applied, I am of the opinion that the defendant Blumenthal is not liable in this action.

The liability of the defendants Hoxie and Cook as sheriff and jailer and deputy sheriff and deputy jailer respectively rests entirely upon the question as to whether the certificate of the justice of the peace affords them protection for the re-

lease and discharge of Basson. If the certificate of the justice appears regular on its face and shows that all the jurisdictional requirements of the statute have been met, then it furnishes complete protection to these defendants. *Anderson vs. Dewey*, 91 Conn. 510.

In respect to the service of the notice to the judgment creditor, the certificate contains the statement that "pursuant to the foregoing order of notice, service having been made upon the Aetna Insurance Company of Hartford, Connecticut, and upon T. Holmes Bracken and Maxwell H. Goldstein, its attorneys, as shown by the officer's return thereof."

It is true that this is not a definite statement that notice was duly given in accordance with the provisions of the statute. It refers back to the officer's return and that return shows a failure to give the statutory notice. There is, however, another fact stated in the certificate which must be considered in determining whether it is regular on its face, and this statement immediately follows the foregoing quotation: "A hearing upon said application was held by me at the County Jail at New London the 20th day of February, 1941, at one o'clock in the afternoon at which time and place the said parties appeared." This statement seems sufficient, so far as the certificate is concerned, to dispose of the question of lack of jurisdiction based upon the claimed defective service of the notice as appears from the officer's return. The plaintiff makes the claim that since it did not in fact appear at the hearing, the statement to that effect in the certificate is of no consequence, since the jailer was present and had knowledge that the plaintiff did not appear, and therefore the recitation in the certificate furnished no protection to the defendant jailer. This claim to a large extent is disposed of by the decision in *Anderson vs. Dewey, supra,* where it appeared that the certificate issued by the justice of the peace recited a compliance with all requirements essential to give him jurisdiction—although, as a matter of fact, the judgment creditor had no notice of the debtor's application to take the oath.

In *Bullymore vs. Cooper,* 46 N.Y. 236, 243 (cited in *Anderson vs. Dewey, supra*), the court refers to *Hart vs. Dubois* (20 Wend. [N.Y.] 236) and states: "In that case the court claims the order to be regular on its face, and asserts, that the court did not lack jurisdiction for the reason, that the provision of the statute as to length of notice which was not

observed, being for the benefit of the creditor, might have been waived by him, and it would be intended that he did waive it....The question in that case seems to have been, whether knowledge acquired by the sheriff, apart from the papers on which he justified, would render him liable. It is held that it will not, in that case, and in *The People vs. Warren* (5 Hill, 440)."

The certificate issued by the justice of the peace upon its face contained a sufficient recital of all facts essential to give the justice of the peace jurisdiction to administer the oath and therefore, justified the defendant jailer in discharging Basson.

Judgment may therefore be entered for the defendants.