# Broom *v.* Douglass, *et al.*

### *Trespass to Person.*

(Decided February 15, 1912. 57 South. 860.)

1. *Judges; Official Acts; Liability.*—The judge of a court of general jurisdiction is not liable for any judicial act in excess of his jurisdiction, which involves an affirmative decision of the fact of jurisdiction, though the decision is erroneous, and though he acts maliciously ; the rule is different where there is a clear absence of all jurisdiction.

2. *Same; Civil Liability.*—The judge of a court of limited jurisdiction is liable civilly when he acts without a general jurisdiction of the subject matter, although his act involves a decision that he has such jurisdiction, made in good faith.

3. *Same.*—A judge of an inferior court who acts fully within his jurisdiction of the subject matter, and who has acquired jurisdiction of the person in a particular case, is not liable civilly, notwithstanding he acts maliciously and corruptly.

4. *Same.*—Where a judge of an inferior court acts judicially as to a subject matter of which he has general jurisdiction, but in the particular case, has not acquired jurisdiction of the person affected, he is not liable civilly where the act involves an affirmative decision that he has jurisdiction of the person and authority to proceed, provided a colorable case has been presented to him, calling for the exercise of judgment and he had determined in good faith that the case called for the exercise of general jurisdiction.

5. *Same; Question for Court.*—Whether a judge of an inferior court had colorable cause for action so as to be relieved of civil liability, is a question of law.

6. *Same; Question for Jury.*—The question of good faith, malice or corruption on the part of a judge of an inferior court having only colorable cause for acting, is one ordinarily for the decision of the jury in determining the question of his civil liability.

7. *Courts; Jurisdiction; Excess.*—Excess of jurisdiction as distinguished from want of jurisdiction means that an act is unauthorized and void with respect to a particular case, though within the general power of the court, because the condition which alone authorize the exercise of his general power in the case, are wanting.

8. *Same; Colorable Cause.*—Colorable cause or colorable invocation of jurisdiction, when applied to the jurisdiction of an inferior court, means that some person apparently qualified to do so, has appeared before the judge and made complaint under oath, stating some facts which may, with other facts unstated, constitute a criminal offense, or stated some fact, which bears some general similitude to a fact designated by law as an offense, calling on the judge to pass on the sufficiency of the affidavit to elicit the process issued.

9. *False Imprisonment; Civil Liability; Justice of the Peace.*—A justice of the peace acts judicially and is not civilly liable, who in good faith issues a warrant for an arrest on an affidavit of a third person, averring that accused threatened to trespass on and occupy land of which affiant has been in possession under claim of ownership, and who in good faith, after a hearing commits accused to jail unless he gives bond to keep the peace, although the affidavit was wholly insufficient to charge any criminal offense.

10. *Same; Burden of Proof.*—One who sues a justice of the peace for damages for issuing a warrant on an affidavit not charging any criminal offense has the burden of proving want of good faith.

(Mayfield, J., dissents.)

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Henry Broom against W. H. Douglass, a justice of the peace, and others, for trespass to the person by false imprisonment. Judgment for defendants, and plaintiff appeals. Affirmed.

KYLE & HUTSON, for appellant. As to what is jurisdiction see *Lamar v. Gunter*, 39 Ala. 338; *Drake v. State*, 68 Ala. 512; *Woodruff v. Stewart*, 63 Ala. 211; *Wilson v. State*, 117 Ala. 160; 1 Smith's Leading Cases, 1107; *Two Rivers Mfg. Co. v. Byers*, 17 Am. St. Rep. 143 and note. The affidavit was void and charged no offense.—*Vaughan v. Congdon*, 48 Am. Rep. 758; *Wright v. Haxon*, 24 Vt. 143. Charging no offense, it conferred no jurisdiction.—*Noles v. The State*, 24 Ala. 696; 13 Wall. 335; 10 Am. Dec. 102; 61 Am. Dec. 438; 21 Am. Dec. 217; *Johnson v. The State*, 82 Ala. 29; *Rhodes v. King*, 52 Ala. 275. Being void, it has no legal effect, and all proceedings founded on it were worthless.—Authorities supra; *Brazzleton v. The State*, 66 Ala. 96; 58 Am. St. Rep. 816. It is conceded, that if Douglass as J. P. had jurisdiction of the case against plaintiff, then his acts in the premises would be *judicial*, and he and his bondsman would not be liable for any errors of judgment committed by him; and this is

true, even though he acted with malice, revenge or other improper motive.—*Woodruff v. Stewart,* 63 Ala. 206; *Coleman v. Roberts,* 113 Ala. 323; 19 Cyc. 333 and note. But the converse of the above proposition is also true. That is, if Douglass acted without jurisdiction as J. P. in issuing the writ, he and his bondsmen are liable.— *Sasnatt v. Weathers,* 21 Ala. 674; *Withers v. Coyles,* 36 Ala. 328-329; 19 Cyc. 336 and note 29; *Tryon v. Pingree,* note 67 Amer. St. Rep. 423 and 424; *Duckworth v. Johnston,* 7 Ala. 581.

WERT & LYNNE, and CALLAHAN & HARRIS, for appellee. Under the evidence in this case, the act was judicial under colorable cause, and the defendant was not liable.—*Bradley v. Fisher,* 13 Wall. 352; *Irion v. Lewis,* 56 Ala. 195; *Busteed v. Parsons,* 54 Ala. 402. It does not follow as a matter of course that the magistrate is liable if the process is void.—*Craig v. Burnett,* 32 Ala. 734, and authorities supra.

SOMERVILLE, J.—Appellant sued appellee in trespass for a false imprisonment, done under color of appellee's official authority as a justice of the peace.

Defendant's plea No. 2 set up an alleged justification, and showed that one Johnson appeared before him (defendant) while he was acting as a justice of the peace, and made affidavit "that Henry Broom [the plaintiff here] has threatened to trespass upon and occupy a certain parcel of land situated in this county, and known as the Dick Mitchell or Dick Bouldin place, of which affiant has the past two or three years been in possession under claim of ownership;" that on this affidavit the justice issued a warrant of arrest for said Broom; that Broom was arrested on this warrant and brought before the justice; that on the hearing of the cause the justice

[Broom v. Douglass, et al.]

adjudged that said Broom should be committed to the county jail for 12 months, unless he gave a bond to keep the peace; and that in doing these things he (defendant) was acting judicially. Plaintiff demurred to this plea on the grounds substantially (1) that the affidavit conferred on the justice no jurisdiction to issue the warrant; and (2) that the affidavit did not charge that any criminal offense had been committed or threatened. The trial court overruled the demurrer, and this action is assigned as error.

Conceding, as we must, that the affidavit shown did not charge that Broom had threatened or was, about to commit, "an offense on the person or property of another," the threat shown being, if executed, only a civil wrong, and that the warrant of arrest was for this reason void, the question to be determined is: Is a judge of inferior and limited jurisdiction liable in trespass, when, acting within his general jurisdiction of the subject-matter, but without conformity to the preliminary requirements which alone give him jurisdiction of the person and authorize him to proceed to exercise his general jurisdiction in the particular case, he issues process actually void, under which such person is unlawfully taken and restrained of his liberty? The answer, we think, will depend upon a consideration to be stated hereafter.

The general question above mooted has been the subject of much discussion by courts and text-writers, and the books exhibit great diversity of opinion as to its proper solution. It involves and draws into sharp conflict two fundamental and equally cherished principles of our legal system—the inviolability of personal liberty, except under the strictest forms of law, on the one hand, and the dignity and independence of the judiciary, on the other. It is complicated, also, by much

confusion of thought with respect to the theory of jurisdiction in its two-fold aspect of subject-matter and person.

We need hardly say that the question is not merely whether the injurious process is irregular or utterly void, but, primarily, it is whether, on principles of sound public policy, the judge should be held liable for his action as a judge. Whether or not an executive officer would be liable for the execution of the process is an altogether different question, and is unaffected by the decisive considerations of policy here involved. These considerations have been so often and so well stated that anything more than a brief recapitulation of settled conclusions is now unnecessary.

We deduce from approved authorities the following principles as pertinent to the present case:

(1) The judge of a court of superior or general jurisdiction is not liable for any judicial act in excess of his jurisdiction which involves a present or previous affirmative decision of the fact of his jurisdiction, even though such decision is wholly erroneous, provided there is not a clear absence of all jurisdiction.—*Busteed v. Parsons,* 54 Ala. 393, 25 Am. Rep. 688; *Bradley v. Fisher,* 13 Wall. 335, 20 L. Ed. 646 (leading case); *Yates v. Lansing,* 9 Johns. (N. Y.) 395, 6 Am. Dec. 290; *Lange v. Benedict,* 73 N. Y. 12, 29 Am. Rep. 80.

(2) The fact that such judge acts maliciously or corruptly in such cases does not render him liable.—*Busteed v. Parsons; Bradley v. Fisher, supra;* 19 Cyc. 333; note to *Lacey v. Hendricks,* 137 Am. St. Rep. 47.

(3) A fortiori, the judge of a court of inferior or limited jurisdiction is liable when he acts without a general jurisdiction of the subject-matter, even though his act involves his decision, made in perfect good faith, that he has such jurisdiction.

(4) When such judge acts fully within his jurisdiction, i. e., when he has jurisdiction of the subject-matter, and has also acquired jurisdiction of the person in the particular case, he is not liable, though he act both maliciously and corruptly.—*Irion v. Lewis,* 56 Ala. 190; *Heard v. Harris,* 68 Ala. 43; *Coleman v. Roberts,* 113 Ala. 323, 21 South. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111; *Woodruff v. Stewart,* 63 Ala. 206; *Lacey v. Hendricks,* 164 Ala. 280, 51 South. 157, 137 Am. St. Rep. 45.

(5) When such judge acts judicially with respect to a subject-matter of which he has a general jurisdiction, but in the particular case he has acquired no jurisdiction of the person affected, he is not liable if the act involves his present or previous affirmative decision that he has jurisdiction of such person and authority to proceed in the particular case, provided (1) a colorable case has been presented to him which fairly calls for or permits the exercise of his judgment with respect thereto; and provided (2) he has determined in good faith, without malice or corruption, that the case presented calls for the exercise of his general jurisdiction.— *Grove v. Van Duyn,* 44 N. J. Law, 654, 43 Am. Rep. 412 (leading case); *Rush v. Buckley,* 100 Me. 322, 61 Atl. 774, 70 L. R. A. 464, 4 Ann. Cas. 318; *McCall v. Cohen,* 16 S. C. 445, 42 Am. Rep. 641; *Bell v. McKinney,* 63 Miss. 187; *Gardner v. Couch,* 137 Mich. 358, 100 N. W. 673, 109 Am. St. Rep. 684; *Smith v. Jones,* 16 S. D. 337, 92 N. W. 1084; *Thompson v. Jackson,* 93 Iowa, 376, 61 N. W. 1004, 27 L. R. A. 92; *Robertson v. Parker,* 99 Wis. 652, 75 N. W. 423, 67 Am. St. Rep. 889; *Calhoun v. Little,* 106 Ga. 336, 32 S. E. 86, 43 L. R. A. 630, 71 Am. St. Rep. 254; *Stewart v. Hawley,* 21 Wend. (N. Y.) 552; *Landt v. Hilts,* 19 Barb. (N. Y.) 283; *Ayers v. Russell,* 50 Hun, 382, 3 N. Y. Supp. 338; *Bocock v.*

*Cochran,* 32 Hun (N. Y.) 523; *Harman v. Brotherson,* 1 Denio (N. Y.) 537; *Gillett v. Thicbald,* 9 Kan. 427.

We, of course, do not affirm that all of these cases have elaborated the principle in precise terms. Some of them have, and others clearly illustrate its operation.

There are numerous cases which support the view that a judge of limited and inferior jurisdiction is liable in every case where he acts merely in excess of his actual jurisdiction, so that his act is void, as distinguished from voidable or irregular.—*Bigelow v. Stearns,* 19 Johns. (N. Y.) 39, 10 Am. Dec. 189; *Yates v. Lansing,* 9 Johns. (N. Y.) 395, 6 Am. Dec. 290; *Gruman v. Raymond,* 1 Conn. 40, 6 Am. Dec. 200; *De Courcey v. Cox,* 94 Cal. 665, 30 Pac. 95; and many other cases cited in notes to *Rush v. Buckley,* 4 Ann. Cas. 325-332; *Tryon v. Pingree,* 67 Am. St. Rep. 423; and *Austin v. Vrooman,* 14 L. R. A. 138.

These cases, however, proceed in general on the narrow view that a void act necessarily imposes liability, which assumes, in accordance with a once much favored theory, that there is a radical distinction between the acts of judges of high and judges of low degree in excess of their jurisdiction, to the extent that the one class should never be held liable, while the other should always be. That there is in reason, justice, or policy any such radical distinction has long been subject to doubt, and is increasingly denied by the best-considered modern cases and by standard text-writers.—*Rush v. Buckley,* 100 Me. 322, 61 Atl. 774, 70 L. R. A. 464, 4 Ann. Cas. 318; *Thompson v. Jackson,* 93 Iowa, 376, 61 N. W. 1004, 27 L. R. A. 92, and editorial note; *Calhoun v. Little,* 106 Ga. 336, 32 S. E. 86, 43 L. R. A. 630, 71 Am. St. Rep. 254; Bishop's Noncontract Law, § 783; Throop on Public Officers, § 720; 1 Jaggard on Torts, 122. And there can be no doubt, we think, but that the distinction

is sufficiently emphasized and public policy fully sub-
served by the requirement of good faith, without malice
or corruption, with at least a colorable invocation of
the judicial function in the particular case.

Our views upon this subject are so fully and satisfac-
torily stated by Beasley, C. J., in *Grove v. Van Duyn*,
44 N. J. Law, 654, 43 Am. Rep. 412, that we adopt his
language as a part of this opinion. He said, in part:

"It is said everywhere in the text-books and decisions
that the officer, in order to entitle himself to claim the
immunity that belongs to judicial conduct, must re-
strict his action within the bounds of his jurisdiction,
and jurisdiction has been defined to be 'the authority of
law to act officially in the particular matter at hand.'
—Cooley on Torts, 417. But these maxims, although
true in a general way, are not sufficiently broad to em-
brace the principle of immunity that appertains to a
court or judge exercising a general authority. Their
defect is that they leave out of the account all those
cases in which the officer in the discharge of his public
duty is bound to decide whether or not the particular
case, under the circumstances as presented to him, is
within his jurisdiction, and he falls into error in arriv-
ing at his conclusion. In such instance, the judge, in
point of fact and law, has no jurisdiction, according to
the definition just given, over 'the particular matter in
hand,' and yet, in my opinion, very plainly he is not re-
sponsible for the results that wait upon his mistake.
And it is upon this precise point that we find confusion
in the decisions. There are certainly cases which hold
that if a magistrate, in the regular discharge of his
functions, causes an arrest to be made under his war-
rant on a complaint which does not contain the charge
of a crime cognizable by him he is answerable in an
action for the injury that has ensued. But I think

[Broom v. Douglass, et al.]

these cases are deflections from the correct rule; they make no allowance for matters of doubt and difficulty. If the facts presented for the decision of the justice are of uncertain signification with respect to their legal effect, and he decided one way, and exercises a cognizance over the case, if the superior court, in which the question arises in a suit against the justice differs with him on this close legal question, is he open, by reason of his error, to an attack by action? If the officer's exemption from liability is to depend on the question whether he had jurisdiction over the particular case, it is clear that such officer is often liable under such conditions, because the higher court, in deciding a doubtful point of law, may have declared that some element was wanting in the complaint which was essential to bring this case within the judicial competency of the magistrate. But there are many decisions which, perhaps, without defining any very clear rule on the subject, have maintained that the judicial officer was not liable under such conditions. The very copious brief of the counsel of the defendants abounds in such illustrations.   *   *   *

"These decisions, in my estimation, stand upon a proper footing, and many others of the same kind might be referred to; but such course is not called for, as it must be admitted that there is much contrariety of results in this field, and the references above given are amply sufficient as illustrations for my present purposes. The assertion, I think, may be safely made that the great weight of judicial opinion is in opposition to the theory that if a judge, as a matter of law and fact, has not jurisdiction over the particular case that thereby, in all cases, he incurs the liability to be sued by any one injuriously affected by his assumption of cognizance over it. The doctrine that an officer having general pow-

[Broom v. Douglass, et al.]

ers of judicature must, at his peril, pass upon the question, which is often one difficult of solution, whether the facts before him place the given case under his cognizance, is as unreasonable as it is impolitic. Such a regulation would be applicable alike to all courts and to all judicial officers acting under a general authority, and it would thus involve in its liabilities all tribunals, except those of last resort. It would also subject to suit persons participating in the execution of orders and judgments rendered in the absence of a real ground of jurisdiction. By force of such a rule, if the Supreme Court of this state, upon a writ being served in a certain manner, should declare that it acquired jurisdiction over the defendant, and judgment should be entered by default against him, and if, upon error brought, this court should reverse such judgment on the ground that the service of the writ in question did not give the inferior court jurisdiction in the case, no reason can be assigned why the justices of the Supreme Court should not be liable to suit for any injurious consequences to the defendant proceeding from their judgment. As I have said in my judgment, the jurisdictional test of the measure of judicial responsibility must be rejected.

"Nevertheless it must be conceded that it is also plain that in many cases a transgression of the boundaries of his jurisdiction by a judge will impose upon him a liability to an action in favor of the person who has been injured by such excess. If a magistrate should, of his own motion, without oath or complaint being made to him, on mere hearsay, issue a warrant and cause an arrest for an alleged larceny, it cannot be doubted that the person so illegally imprisoned could seek redress by a suit against such officer. It would be no legal answer for the magistrate to assert that he had a general

cognizance over criminal offenses; for the conclusive reply would be that this particular case was not, by any form of proceeding, put under his authority.

"From these legal conditions of the subject, my inference is that the true general rule with respect to the actionable responsibility of a judicial officer having the right to exercise general powers is that he is so responsible in any given case belonging to a class over which he has cognizance, unless such case is by complaint or other proceeding put at *least colorably* under his jurisdiction. Where the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable in a suit to the person affected by his decision, whether such decision be right or wrong. But when no facts are present, or only such facts as have neither legal value nor color of legal value in the affair, then, in that event, for the magistrate to take jurisdiction is not, in any manner, the performance of a judicial act, but simply the commission of an unofficial wrong. This criterion seems a reasonable one; it protects a judge against the consequences of every error of judgment, but it leaves him answerable for the commission of wrong that is practically willful; such protection is necessary to the independence and usefulness of the judicial officer, and such responsibility is important to guard the citizen against official oppression.

"The application of the above-stated rule to this case must obviously result in a judgment affirming the decision of the circuit judge. There was a complaint, under oath, before this justice, presenting for his consideration a set of facts to which it became his duty to apply the law. The essential things there stated were that the plaintiff, in combination with two other persons, entered upon certain lands, and 'with force and arms

[Broom v. Douglass, et al.]

did unlawfully carry away about four hundred bundles of cornstalks, of the value,' etc., and were engaged in carrying other cornstalks from said lands. By a statute of this state (Rev. p. 244, § 99), it is declared to be an indictable offense 'if any person shall willfully, unlawfully and maliciously' set fire to or burn, *carry off,* or destroy any barrack, cock, crib, rick or stack of hay, corn, wheat, rye, barley, oats, or grain of any kind, or any trees, herbage, growing grass, hay or other vegetables, etc. Now, although the misconduct described in the complaint is not the misconduct described in this act, nevertheless the question of their identity was *colorably* before the magistrate, and it was his duty to decide it; and under the rule above formulated he is not answerable to the person injured for his erroneous application of the law to the case that was before him."

By "excess of jurisdiction," as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked.

By a "colorable cause," or a "colorable invocation of jurisdiction," as applied to cases like the instant one, we understand and mean that some person, apparently qualified to do so, has appeared before the justice and made complaint under oath and in writing, stating at least some fact or facts which enter into and may, under some condition, or in co-operation with some other unstated fact or facts, constitute a criminal offense, or stating some fact or facts which bear some general similitude to a fact or facts designated by law as constituting an offense; in either case, calling upon the justice

to pass upon their sufficiency to elicit the process issued.

A less general definition is not practicable, even were it expedient, and what we have said will serve to illustrate the general scope of this requirement. Whether it is met is, of course, a question of law for the court; while the issue of good faith, malice, or corruption is ordinarily for the jury to determine. We have examined all the decisions of this court upon the general question under consideration, and, with a single exception, find none in conflict with the rule we now adopt.

In *Duckworth v. Johnston,* 7 Ala. 581, the warrant was held void, because the affidavit charged no offense. The justice was not sued, and the only conclusion was that the *officer* who executed it, and the *party* who caused it to be issued, were liable in trespass. To the same effect, is *Crumpton v. Newman,* 12 Ala. 199, 46 Am. Dec. 251.

In *Sasnatt v. Weathers,* 21 Ala. 674, the suit was in trespass against the justice and the constable. The justice had rendered a judgment for costs against the plaintiff in preliminary proceedings for a felony, which he had absolutely no authority to do in any phase of the case. On this void judgment, he issued an execution —a purely *ministerial act.* The writ was held void, and the justice was held liable for issuing it and the constable for executing it. The question of liability for *judicial* action was not presented.

In *Withers v. Coyles,* 36 Ala. 320, the mayor of Mobile was held liable for trespass to a slave whom he had imprisoned under an ordinance "for the punishment of vagrants and disorderly persons;" this court holding that the ordinance was applicable only to *free* persons, and not to *slaves,* although the word "persons" sometimes included slaves. Inasmuch as the magistrate was called upon to construe the ordinance as to its proper

application to persons, and his decision of the question was a judicial act with a *colorable* foundation, we think the conclusion that he was liable for his erroneous construction of the language of the ordinance was not justified on principle, and is not supported by any authority. We are therefore unwilling to follow this decision.

In *Craig v. Burnett,* 32 Ala. 728, the members of the town council of Cahaba were ex officio justices of the peace. Sitting as a *town council,* and *not as magistrates,* they convicted the plaintiff of an offense within their jurisdiction as magistrates, and ordered him to be imprisoned in default of payment of the fine. This judgment was, of course, fundamentally void, as was also the town clerk's warrant of arrest. Under this pseudo-judgment, the mayor committed plaintiff to the custody of the town marshal, and he sued mayor, clerk, and marshal for the false imprisonment. There was here no judicial action, and liability attached as a matter of course. Comment is unnecessary; but the language of the opinion by WALKER, J., is worthy of notice: "If it appeared that the fact, upon which the jurisdiction of the council over the matter of the imprisonment depended was *judicially* considered and adjudged by the council, then the defendants would not be liable for their mere error of judgment. Every judicial tribunal, invested with authority to be exercised in a certain contingency, has authority to inquire and ascertain whether the contingency has occurred. *Where jurisdiction depends upon the existence of a preliminary fact, there is authority to decide whether that fact exists.* A court is entitled to as full protection against an error of judgment in reference to the existence of the jurisdictional fact as in reference to the merits of the suit." (Italics ours.) It will be noted, also, that no distinction is recognized between superior and inferior judges. The

loose, if not inaccurate, treatment of this subject in some of the early cases is well illustrated by the citation of this case in support of the conclusion reached in *Withers v. Coyles, supra,* with which it is evidently wholly inconsistent.

In *Woodall v. McMillan,* 38 Ala. 622, the action was trespass for a false imprisonment against the prosecutor for causing a justice of the peace to issue a warrant of arrest for plaintiff on an affidavit charging him with the commission of the crime of perjury at Huntsville, in a *neighboring county.* There being no jurisdiction of the *subject-matter,* the warrant was held void, and the prosecutor held liable. It would seem that the justice also would have been liable under the rule we announce.

In *Heard v. Harris,* 68 Ala. 43, the principle of the rule was expressly left undecided; BRICKELL, C. J., saying: "Whether it be true or not the personal protection the maxim [of judicial exemption] affords is confined, when the authority of an inferior jurisdictional officer, like a justice of the peace, is drawn in question, to matters within their jurisdiction, or whether he is entitled to protection because he may have erroneously adjudged he had jurisdiction, and whether, at his peril, he adjudges that question, we do not consider."

In *McLendon v. A. F. L. M. Co.,* 119 Ala. 518, 24 South. 721, a justice of the peace was held liable for falsely certifying an acknowledgment to a deed; the grantor not having made the acknowledgment, nor even appeared before the justice for the purpose. Although the certificate of acknowledgment is, under our decisions, a judicial act, it is manifest that it was here without any *color of authority,* and there was nothing to challenge his judicial action. Indeed, it was prima facie malicious or corrupt.

In *Crosthwait v. Pitts,* 139 Ala. 421, 36 South. 83, the same conclusion, on the same facts, is reaffirmed.

In the recent case of *Earp v. Stephens,* 1 Ala. App. 447, 55 South. 270, a justice of the peace was held liable for issuing a writ of attachment against property *without either affidavit or bond.* Here there was nothing to provoke inquiry, and not even a colorable appeal to the authority exercised. The ruling is explained by WALKER, P. J., in perfect accord with the instant case; for he says: "It is not to be supposed that the Legislature intended that the official should have the power to direct such a summary seizure of property without even a colorable attempt to require an observance of the precautions prescribed to prevent the issuance of the writ in cases in which the law did not authorize it, and to provide the prescribed means of indemnity for an abuse of the extraordinary process."

Applying, now, the rule of liability above stated to the facts of the present case, we are of the opinion that the affidavit made before the defendant as a justice of the peace, though wholly insufficient to charge any criminal offense, or to justify the issuance of the warrant of arrest, nevertheless was clearly an attempt to charge a threatened criminal trespass on affiant's land. And, stating facts which were elements of that offense, and of legal significance and value in its proof, a colorable case was presented which fairly invoked the justice's judgment as to their sufficiency for the purpose intended. The issuance of the warrant was therefore a judicial act, involving his inquiry and affirmative conclusion as to his power and authority to do so, for which he cannot be held liable, if he acted in good faith. It follows that the special plea stated a good defense to the complaint as framed, and the demurrers were properly overruled.

The question of good faith on the part of the defend-
ant is not directly presented here by the pleadings; but
we deem it necessary to any clear apprehension of the
rule of nonliability to state, also, its essential limita-
tions. And in this connection it is to be noted that,
since the law will always prima facie impute good faith
to judicial action, the burden is upon the plaintiff, in a
case like this, to both allege and prove the want of it.

DOWDELL, C. J., and SIMPSON, ANDERSON, and SAYRE,
JJ., concur. McCLELLAN, J., concurs in the conclusion.

MAYFIELD, J.—(dissenting.)—On rehearing, the
majority decline to change the decision, but do change
the opinion. To this changed opinion, I propose to re-
ply.

This opinion, by my Brother SOMERVILLE, will be a
splendid one when a case arises to which it can apply.
It is not applicable to the case at bar, but is applicable
to cases like those of *Grove v. Van Duyn,* 44 N. J. Law,
654, 43 Am. Rep. 412, and *Bradley v. Fisher,* 13 Wall.
335, 20 L. Ed. 646. I fully concur with Brother SOMER-
VILLE that these are leading American cases, and among
the best considered, by the ablest judges, as to the civil
liability of inferior judges as for their judicial actions.
There is not a sentence, a line, a word, in the opinions
of those two cases in which I do not concur; nor do I
think that there was error in the conclusion or decision
of either.

The radical and controlling difference between these
cases and the one under consideration is that the for-
mer were actions which sought to hold a judge of an in-
ferior court liable for erroneous judicial actions; while
this action seeks to hold the judge liable for a void and
unauthorized ministerial act. If this had been an ac-

tion for "an erroneous or corrupt exercise by the jus-
tice of the jurisdiction the law confers," then the opin-
ion of the majority would be applicable, and sufficient
answer to the contentions of appellant; but the fact re-
mains unanswered, and this record, and the statutes,
and the decisions of this and other courts, declare that
it is not such a case, and must be distinguished from
such.

This distinction is clearly pointed out by BRICKELL, J.,
in the case of *Kelly v. Moore,* 51 Ala. 364, 365. It is
there made clear that actions like that there under con-
sideration (which was exactly like this) were brought
under the statute, nor for a corrupt or erroneous exer-
cise of jurisdiction conferred by law, but for an abuse
of the authority of the office, in acts done "under color
of office." In the case stated, BRICKELL, J., treating of
the wrong complained of, says: " 'Under color of his
office,' he arrests and imprisons the plaintiff. This was
a misdemeanor at common law, and a tort for which an
action could have been maintained against the justice.
The sureties on his official bond would not, at common
law, have been liable for this tort. The malfeasance of
their principal, of which misfeasance could not also be
predicated, was not within the scope of their obligation.
—*Governor v. Hancock,* 2 Ala. 728; *McElhaney v. Gil-
leland,* 30 Ala. 183. This was deemed a defect in the
common law, and to cure it the statute now extends the
liability of sureties on official bonds to injuries from
wrongful acts done by the officer under color of his of-
fice, as well as to the nonperformance or negligent per-
formance of official duty.—R. C. § 169."

The gravamen of the complaint in this case, to quote
exactly, is as follows: "The said Douglass did, under
color of his office as such justice of the peace, cause the
plaintiff to be illegally arrested, by which he was de-

prived of his liberty for a long time," etc. No complaint whatever is made of any judicial action on the part of the justice, whether erroneous or corrupt. It is a ministerial act, done under color of office, of which complaint is made; and for such the statute makes the justice and his official bondsmen liable.

It is true that the justice and the surety attempted to defend against this action by pleading that the acts of the justice were "judical," and that therefore neither he nor the surety was liable civilly for damages consequent upon such acts. But the trouble as to this plea was that it set out the warrant issued by the justice, and under which the plaintiff was arrested and imprisoned, which warrant, as Brother SOMERVILLE very correctly holds, was void on its face. In issuing this warrant, the justice no more acted judicially than did the constable who executed it; both were equally ministerial acts, and the two officers are equally liable as for arrests made under the writ, if in fact and in law it is absolutely void.

A justice of the peace, in both civil and criminal proceedings before him, acts both judicially and ministerially; and as for his judicial acts, if within his jurisdiction or "colorably so," as stated by Justices BEASLEY and SOMERVILLE, he is not civilly liable, though the acts are both erroneous and corrupt; but as for his ministerial acts which are void and wholly unwarranted by law, he is civilly and personally liable, was so under the English common law, is so under all American common law, and, together with his official bondsmen, is in this state made liable by statute.—51 Ala. 365, 366.

A justice, in criminal proceedings, in hearing complaints, taking affidavits, examining witnesses to determine whether or not any offense has been committed, and if so, what offense, and who is probably guilty thereof, acts judicially, just as he does, on the hearing

or the trial, when the accused is brought before him; and if the justice errs in such matters he is not civilly liable to any party injured by reason of his error, as long as he acts within his jurisdiction as justice. But when he undertakes the issuing of a warrant of arrest which commands and secures the arrest, and possibly the imprisonment, of the person charged he quoad hoc acts ministerially; and if he issues a warrant which is absolutely void on its face, or a warrant which is valid, but not authorized by law to be issued by the justice in that particular case, he is civilly liable, just as a private citizen would be if he issued such a process, and thus procured wrongful arrests and imprisonments. From such liability, the justice cannot hide beneath his judicial ermine.

The effect of our statute is to make also liable the official bondsmen of the justice for all such unlawful and unwarranted acts done "under color of office." It is the "color of office" alone that makes the bondsmen liable, and, of course, they are not liable if the principal is not so liable. "Color of office" is necessary to render the surety liable as for ministerial acts, as well as is "color of jurisdiction" to excuse the justice as for judicial acts.

The law is well stated by the Supreme Court of New York, in the case of *Blythe v. Tompkins*, 2 Abb. Prac. (N. Y.) 472: "The defendant having jurisdiction to issue warrants for the apprehension of persons for violating the provisions of the 'act to prevent intemperance, pauperism, and crime' could not be made liable in a civil action for deciding that a warrant should issue on insufficient evidence. In determining whether there was sufficient evidence to authorize the issuing of a warrant, he acted judicially; and he is not liable while thus acting, even if he erred in judgment.—*Horton v. Auch-*

*moody,* 7 Wend. 200; *Tompkins v. Sands,* 8 Wend. 462 [24 Am. Dec. 46]; [*People v. Collins*] 19 Wend. 56; [*Harman v. Brotherson*] 1 Denio, 537, 540; [*Houghton v. Swarthout,* 1 Denio] 590; *Payne v. Barnes,* 5 Barb. 467; [*Weaver v. Devendorf*] 3 Denio, 117; [*People v. Sup'rs of Chenango County*] 11 N. Y. 573. But in *making* the warrant and delivering it to the officer he acted ministerially.—*Rogers v. Mullinor,* 6 Wend. 597, 603 [22 Am. Dec. 546], 8 Wend. 462 [24 Am. Dec. 46]; *Van Rensalaer v. Witbeck,* 7 N. Y. 521; *Houghton v. Swarthout,* 1 Denio, 589. 'Where *ministerial* duty is violated the officer, although for most purposes a judge, is still civilly liable for such misconduct.—*Wilson v. Mayor of N. Y.,* 1 Denio, 599 [43 Am. Dec. 719]; Barb. Cr. Tr. 429, 430, and cases cited. The main question to be decided is whether the warrant is void on its face. If it is, then it will not protect the defendant, although he acted in good faith, and was authorized by the evidence before him to issue a valid warrant."

The distinction between judicial and ministerial acts, and the liability as for each, is observed by all the text-writers and in all the decisions upon the subject. See Words and Phrases, Ministerial Acts, which collects the decisions. The same distinction between the two kinds of acts of the justice, and his liability for each, has been repeatedly recognized by this court. "Justices are not liable for their judicial acts, however erroneous, and there can be no inquiry as to the motive for such acts.— *Coleman v. Roberts,* 113 Ala. 323, 21 South. 449 [36 L. R. A. 84 59 Am. St. Rep. 111]; *Heard v. Harris* 68 Ala. 43; *McLendon's Case,* 119 Ala. 518., 24 South. 721; *Irion v. Lewis,* 56 Ala. 190. But they and their sureties are liable for their wrongful ministerial acts done under color of office.—*Coleman v. Roberts, supra; McLendon's Case, supra; Kelly v. Moore,* 51 Ala. 364;

*Mason v. Crabtree,* 71 Ala. 479.   A justice of the peace
who affixes an official certificate of acknowledgment to
a deed, which is false and fraudulent, is guilty of a
gross usurpation, for which he is liable on his official
bond to the party injured.—*McLendon's Case, supra.*
Where a justice of the peace commits a wrong under
color of his office, which is a usurpation of judicial au-
thority, he will not be protected from responsibility on
his bond because he acted in a judicial capacity.—*Ib.;
Heard v. Harris,* 68 Ala. 47; *Woodruff v. Stewart,* 63
Ala. 215." 4 Mayfl. Dig. 2.

If the action in this case had been based solely upon
a judicial act of the justice, then the opinions of the
majority (original, and that on the rehearing) would
be applicable, or, at least, "colorably" applicable; but
the action is for an unauthorized and illegal ministerial
act done "under color of office." Hence the majority
opinions are not "colorably" applicable to the case in
hand.

So far as I know, but few courts or judges, during the
last century, have doubted or denied the soundness of
the proposition that an action will not lie against a
judge for a wrongful commitment, nor for an errone-
ous judgment, nor for any other act performed or done
by him in his "judicial capacity." Such absolution or
exemption from liability is necessary to the independ-
ence, if not to the very existence, of the judiciary, as its
sole duty is to pass upon and determine the rights and
liberties of the citizens, among themselves, and as be-
tween them and the state, and if judges are to be held
liable for their erroneous decisions we will soon have no
judges, or, if any, they will all be bankrupts. Cases
involving great interests, and the liberties and even the
character of prominent parties, exciting the deepest feel-
ings and prejudices, are constantly being determined by

the courts. In such cases, there is often great conflict in the evidence, and great doubt as to the law which should control the decision, imposing upon the judges the severest tests of labor, care, and of painstaking consciousness of responsibility. And often, in such cases, the losing party feels the keenest disappointment, and therefore the more readily looks to anything, rather than to the reasoning or the soundness of the decision against him, to explain the action of the judge or judges who decide against him. This intensified feeling of disappointment often finds vent in imputations against the character of the judges or of the court rendering the decision. This results, not always from bad motives of the judges or courts rendering the decisions, but is probably largely due to the imperfection of human nature. If an action would lie for the wrongful decision of a judge under such conditions, when the passions and prejudices of litigants are thus fired by disappointment, many litigants would not hesitate to ascribe any motive or character to the act or decision which was against them, their interest, liberty, or character, such is the frailty of human nature. For this reason, the law has seen fit to provide that judges shall not be liable for their judicial acts, though done corruptly and maliciously.

As was said by Justice Field, in *Bradley v. Fisher*, 13 Wall. 350, 20 L. Ed. 646: "In this country, the judges of the superior courts of record are only responsible to the people, or the authorities constituted by the people, from whom they receive their commissions for the manner in which they discharge the great trusts of their office. If in the existence of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, they may be called to an account by impeachment and suspended or removed from office. In

[Broom v. Douglass, et al.]

some states, they may be thus suspended or removed without impeachment by a vote of the two houses of the Legislature."

The only liability that attaches to an erroneous judicial act is when there is clearly no jurisdiction of the subject-matter, when, of course, an asserted authority is obviously usurped, and if the want of authority is known to the judge no excuse is permissible; but the manner in which, and the extent to which, the jurisdiction shall be exercised are questions peculiarly, if not exclusively, for the determination of the judge.

Justice Field (13 Wall. 353, 20 L. Ed. 646) quotes from the English justice, Blanc, that there is "a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction;" and goes on to say that Judge Blanc "held that, where the subject-matter was within the jurisdiction of the judge, and the conclusion was erroneous, although the party should, by reason of the error, be entitled to have the conclusion set aside, and to be restored to his former rights, yet he was not entitled to claim compensation in damages for the injury done by such erroneous conclusion, as if the court had proceeded without any jurisdiction."

While the immunity from liability of judgment as for judicial acts is almost absolute, no such immunity exists as for their ministerial acts. As to such latter class of acts, judges are liable, just like all other public officers; and to protect the people against the oppression of officers statutes have been enacted requiring certain officers to execute official bonds, conditioned to pay all such damages as may result to the people or to the state if the officer shall not faithfully perform and discharge the duties of the office. Among the officers required to give

such bonds are justices of the peace and probate judges. While they and their bondsmen are not liable as for acts which are strictly judicial, if done within their jurisdiction, they are liable as for the ministerial acts, as such, just as are sheriffs and other officers.

The distinction which I have endeavored to draw between "judicial acts" and "ministerial acts" is clearly observed by all the cases cited and relied upon by the majority. The case of *Bradley v. Fisher, supra,* which the majority say is the leading case, was based solely upon "judicial acts" by reason of the "willful, malicious, oppressive, and tyrannical acts and conduct" of a judge in depriving the plaintiff of the right to practice law; that is, in disbarring the plaintiff from such practice. The other leading case relied upon is the New Jersey case quoted from at length. While the facts in that case are very similar to those in the case at bar, it is clearly distinguishable from this upon the sole ground of judicial action and ministerial action. There was no question in that case as to the validity of the warrant of arrest, but only as to whether it was lawfully issued under the affidavit and the evidence before the justice when he issued it. The affidavit is set out in that case, but the warrant is not; but the statement of facts says that the justice thereupon "issued his warrant in the ordinary form." If the warrant in that case had been void, as it was in this, the justice would have been held liable under the opinion there.

Chief Justice BEASLEY, in the case so much relied upon and cited by the majority (44 N. J. Law, 660, 43 Am. Rep. 412), says: "If a magistrate should, of his own motion, without oath or complaint being made to him, on mere hearsay, issue a warrant and cause an arrest for an alleged larceny, it cannot be doubted that the person so illegally imprisoned could seek redress by a suit

[Broom v. Douglass, et al.]

against such officer. It would be no legal answer for the magistrate to assert that he had a general cognizance over criminal offenses; for the conclusive reply would be that this particular case was not, by any form of proceeding, put under his authority."

So in the case at bar, if the justice had issued a proper warrant for "a trespass after warning," or for a threatened breach of the peace, then his liability, if any, would have been as for a judicial act; but the warrant he issued was absolutely void, charging no criminal offense known to God or man; and, had he taken a proper affidavit and fully examined the affiant and his witness under oath, and their evidence had shown conclusively that a dozen criminal offenses had been committed, and that the person arrested was guilty of all, this would not have warranted him in issuing a warrant void on its face, and which was intended to, and did, procure the arrest and imprisonment of this plaintiff. Suppose the affidavit or other proof before the justice should show the offense of larceny, this would not authorize the issuance of a valid warrant charging murder, and would certainly not authorize or justify the issuing of a void warrant.

But the justice in this case is in a worse condition; the affidavit he took was as void as his warrant, and he failed to examine any witness before issuing the warrant, as the statute directs, but proceeded to issue an absolutely void warrant, and now attempts to escape liability by hiding under his judicial robes as for this unwarranted and illegal ministerial act of issuing a void warrant, and then directing the sheriff or constable to arrest and imprison the plaintiff under the void process issued by him, thus depriving the plaintiff of his liberty, without due process of law, and rendering the sheriff or constable absolutely liable for obeying

his orders and executing his process, as the law directs such executive officer to do.

What was said by the Supreme Court of New York, in *Blythe v. Tompkins,* 2 Abb. Prac. 472, is very appropriate here. The officer who issues or executes process must see that it is valid on its face, or he is liable for his acts under it. The law does not throw any protection around an officer or person who attempts to arrest by an illegal warrant.

The writ or warrant must not be deficient in the frame of it. It must at least be lawful on its face. It would be strikingly unjust to hold one officer liable for a ministerial act in executing process, but excuse the officer who issued it, who was charged with the duty and was under bond to issue it correctly. The latter is presumed to be, and should be, more competent to judge of the validity of the process which he himself issues than the former, whose duty the law makes it to execute all process issued by the latter. If the justice acted judicially in issuing the warrant, there might be some force in the reasoning of the majority opinion; but, as all the authorities, including our own, hold this act to be a ministerial one, I cannot see how the judicial immunity can protect the justice as to this act.

A justice who renders an erroneous or void judgment and sentence may not be liable therefor if the subject-matter and the party were within and under his jurisdiction; but if, in addition to that, he issues a void mittimus, committing the defendant to jail, or to the whipping post, or to be hung, as a justice once did in this state, and the mittimus should be executed, I apprehend there would be no doubt as to his liability as for this act. The same is true as for his rendering a void judgment in a civil action. He might not be liable if the judicial act was within his jurisdiction, or "colorably"

so, if you please to so term it; but if he should thereafter issue a void execution, and the defendant's property should be sold thereunder wrongfully, I apprehend that there would be no doubt as to his liability in that instance. The issuance of a warrant upon affidavit or other ex parte judicial examination as to probability of guilt, is as much a ministerial act as is the issuance of an execution or mittimus after trial and judgment.

It was the warrant that caused the arrest and imprisonment of the plaintiff in this case, not the void affidavit, nor the failure to examine affiant or other witnesses before its issuance, or before any erroneous judicial judgment. If the warrant was void, as the court holds it was, it could not be cured because there was a sufficient affidavit or preliminary proof, and, if so, certainly it was not cured because there was a void affidavit and no preliminary examination of witnesses, as the statute contemplates and provides for.

To my mind, the only plausible theory upon which the decision and conclusion of the majority can rest is upon one thus far not suggested, though two opinions have thus far been written. That plausible theory is that the affidavit and warrant are not void, but valid, or at worst merely irregular or voidable only; but the trouble with this theory is that it runs counter to both the facts and the record in this case, as well as to scores of decisions of this court, and to hundreds, if not to thousands, of those of other courts. Many of these are cited in the opinion of Justice SOMERVILLE, and many in the brief of the appellant. I will cite here only a few, in which others are cited, showing beyond doubt that both the affidavit and the warrant are absolutely void for all or any purposes:—*Duckworth v. Johnston,* 7 Ala. 578; *Crumpton v. Newman,* 12 Ala. 199, 46 Am. Dec. 251; *Miles v. State,* 94 Ala. 106, 11 South. 403;

*Johnson v. State,* 82 Ala. 29, 2 South. 466; *Monroe v. State,* 137 Ala. 88, 34 South. 382; *Butler v. State,* 130 Ala. 127, 30 South. 338.

Any doubt that I might otherwise have upon the questions whether or not this warrant was void on its face, and whether this court should now decide the inquiry affirmatively and reverse the case, is removed by what CHILTON, C. J., said of a warrant which much more nearly approached validity, or was much more "colorable" of jurisdiction, than this one. In that case, the great Chief Justice said: "Is the warrant in this case void upon its face? Does it show, upon its face, that the justice had no jurisdiction of the complaint, the substance of which the law requires should be stated in it?—Code, § 3341. Upon our first examination, we thought it was not void, but informal merely. Upon having our attention more particularly called to it by the counsel for the prisoner, we are fully satisfied that our first impression was wrong, and that it is wholly void. * * * The warrant in this case appears, upon its face, to be predicated upon the affidavit of Mary Noles, wife of the prisoner, which merely states that she 'is *afraid* that her husband, Joseph Noles, of said county, laborer, will beat, wound, maim or kill her, or do her some bodily hurt.' It sets forth no other cause of complaint, than in the recital of this oath, and proceeds 'these are therefore to command you,' etc. This statute, being in restraint of liberty and penal, must be strictly construed; that is, it may not be enlarged, by construction, beyond the plain import of the terms in which it is couched. We are aware that this looks like a technical ground upon which to reverse a cause of this grave importance; but it is our duty to decide the law, irrespective of consequences, and being satisfied that the warrant is void we have no alterra-

[Broom v. Douglass, et al.]

tive but to reverse the sentence and remand the cause, that the prisoner may be again tried."—*Noles v. State,* 24 Ala. 696, 697.

To recapitulate: The error of the majority is that they treat the case as if the act of the justice complained of was a judicial one, when clearly it was a ministerial one. It was not the taking of the void affidavit that injured and damaged plaintiff, and it was not of that he complained. It was issuing the void warrant and placing it in the hands of the executive officer by the judicial officer, which caused plaintiff's arrest and incarceration. This was ministerial and not judicial, though done by a judge or justice of the peace. If a sufficient affidavit would not have saved him from liability as for this wrongful and void ministerial act, then certainly a void though colorable one could not. If the only wrong here complained of had been a judicial act, I would not contend that this justice was civilly liable; nor do I understand that plaintiff's counsel has ever so contended. It is liability for a void ministerial act that is sought to be enforced, that is given by statute; and I do not think that the court ought to thus take it away.

Justices of the peace and their sureties are not the only officers or parties the statute makes liable; but it extends the liability to other judges, and has been enforced by this court even against probate judges. In the case of *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65, this court drew clearly the distinction I am trying to draw here between judicial and ministerial acts, and defined the liability of the officers and their sureties as for each. This court in that case said: "It is an unquestioned rule, founded on the public benefit, the necessity of maintaining the independence of the judiciary, and its untrammeled action in the administration

of justice, that a judge cannot be held to answer in a civil suit for doing, or omitting or refusing to do, an official act in the exercise of judicial power. His responsibility for the manner in which he discharges the high trusts committed to him is to the sovereignty from whom he derives his authority. It is, also, an undisputed rule that an officer who is charged with the performance of ministerial duties is amenable to the law for his conduct, and is liable to any party specially injured by his acts of misfeasance or nonfeasance. When the law assigns to a judicial officer the performance of ministerial acts, he is as responsible for the manner in which he performs them, or for neglecting or refusing to perform them, as if no judicial functions were intrusted to him. The boundary of his judicial character is the line that marks and defines his exemption from civil liability. Our law, organic and statutory, confers on the probate judge large judicial powers, and there is also assigned to him the performance of many acts merely ministerial; he is both a judicial and a ministerial officer. In *Thompson v. Holt*, 52 Ala. 491, it is observed: 'A bond was, by legislation, demanded from him as a guaranty for diligence and fidelity in the performance of his ministerial duties, as it is exacted from other mere ministerial officers. It is not a guaranty for his integrity and fidelity as a judge. For this no other security is demanded from him than that demanded from all other judicial officers—his official oath, and the sense of responsibility which the power and dignity of the office inspire. The official bond stands as an indemnity against his errors, or his willful misconduct, as a ministerial officer only,' etc."