559 So.2d 163 (1990)
Carrie S. GORE
v.
CITY OF HOOVER.
88-1067.
Supreme Court of Alabama.
February 23, 1990.
S. Greg Burge of Heninger, Burge & Vargo, Birmingham, for appellant.
Jack H. Harrison of Gordon, Harrison & Latham, Birmingham, for appellee.
ALMON, Justice.
This appeal involves an action for unlawful arrest brought by Carrie S. Gore *164 against the City of Hoover and Western Supermarkets, Inc. ("Western").
On March 30, 1987, Nancy Vining, in her capacity as a magistrate for the City of Hoover, received a complaint from Sharon Sellers, a representative of Western. Western requested a warrant for the arrest of Carrie J. Gore, alleging that she had presented a worthless check drawn on insufficient funds in violation of Ala.Code 1975, § 13A-9-13.1. Sellers had called the telephone number on the check but the number had been disconnected; she had sent a certified letter to the address on the check, but the letter had been returned "unclaimed."
Vining used computer information available to her and obtained an address for a "Carrie Gore" in Lanett, Alabama. According to Vining, there was no other "Carrie Gore" listed in the computer information. Printed on the check was the name "Carrie J. Gore" and the address "905 Royal Oaks Drive" in Birmingham. Handwritten on the check were the numbers "6/19/63" and "4731237." The Western cashier who took the check apparently wrote the numbers as the date of birth and the driver's license number of the person presenting the check, but the evidence indicates that Sellers did not explain to Vining what the numbers were. From the information on the computer, Vining typed onto an arrest information form the name "Carrie Gore," the date of birth "7/13/41," the address "1309 North 13th Avenue" in Lanett, and the driver's license number "3712583."[1] Vining issued a warrant for the arrest of Carrie Gore in Lanett. The plaintiff, Carrie S. Gore (hereinafter "Gore"), was arrested at that address, but the charges were dropped when it became clear that she was not the person who had presented the check.
On March 3, 1988, Gore filed suit against the City of Hoover and Western, alleging negligence, malicious prosecution, false arrest, and a cause of action under 42 U.S.C. § 1983. On July 8, 1988, the trial court granted Western's motion for summary judgment. On April 12, 1989, the trial court granted the City of Hoover's motion for summary judgment. Western is not a party to this appeal.
Gore argues that Magistrate Vining was negligent, that her negligence caused injury to Gore, and that the negligence occurred while Vining was acting within the line and scope of her authority. Gore concedes that she has no cause of action for false arrest or malicious prosecution, but argues that she can maintain a negligence action because, she says, her injuries were caused by the "neglect, carelessness, or unskillfulness" of the magistrate for the City of Hoover. Gore contends that the warrant for her arrest was wrongfully issued because, she says, the magistrate negligently failed to compare the information on the worthless check with the computer information she had obtained, and she contends that the city should be held liable under the provisions of Ala.Code 1975, § 11-47-190. That statute imposes liability for injuries suffered through "the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty."
The trial court correctly entered summary judgment for the city, however, because Vining was protected by judicial immunity while engaging in the judicial function of issuing warrants.
Bahakel v. City of Birmingham, 427 So.2d 143 (Ala.1983), involved a very similar action for unlawful arrest against a municipality, a municipal magistrate, and the affiant who procured the plaintiff's arrest warrant (the claim against the affiant was not at issue on the appeal). The lead opinion began, "This appeal involves an action for an unlawful arrest," 427 So.2d at 144, but then disposed of the claim against the city with the following rationale:
"Whether plaintiff can maintain a negligence-based action for an unlawful arrest and thereby circumvent the principle that a municipality is not liable for false arrests or malicious prosecutions is a *165 question we need not answer. Plaintiff's argument, in effect, asserts a claim for recovery under a theory that can only be called `negligent prosecution.' That theory does not present a cognizable tort claim."
427 So.2d at 145. As can be seen from the opinion of Chief Justice Torbert, concurring in part and dissenting in part, the only claim against the city was that the magistrate had negligently accepted the affiant's mistaken identification of Bahakel as the person who had brandished a weapon at her. Thus, the claim against the city was indistinguishable from the claim presented here, and could be described as "negligent misidentification of the plaintiff, leading to issuance by a magistrate of an arrest warrant."
Similarly, the claim in Boyette v. City of Mobile, 442 So.2d 61 (Ala.1983), could be described as "negligent failure to investigate an alleged assault, leading to issuance by a magistrate of an arrest warrant." The three cases are indistinguishable, and this case, like Bahakel and Boyette, should be decided on the principle announced in Neighbors v. City of Birmingham, 384 So.2d 113 (Ala.1980), that a municipality is immune from suit for false arrest or malicious prosecution, even after Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), overruled the principle of governmental immunity for municipalities.
The Court in Bahakel v. City of Birmingham unanimously agreed that the complaint did not state a claim against the city, although six Justices voted to reverse what they construed to be a Rule 12(b)(6), A.R.Civ.P., dismissal of the complaint as against the magistrate. The Court decided the issue of the magistrate's liability in Bahakel v. Tate, 503 So.2d 837 (Ala.1987). After noting that seven of the Justices had voted in the previous appeal that Tate, the magistrate, was entitled to limited judicial immunity, the Court affirmed the summary judgment in his favor:
"[I]f a judge of a court of limited jurisdiction has subject matter jurisdiction and a colorable claim of personal jurisdiction, he is immune so long as he acts in good faith.
". . . .
"... Bahakel has presented nothing to overcome the presumption of good faith incident to judicial action ..., and so the summary judgment is due to be affirmed. The facts do not leave room to question that Magistrate Tate was acting with judicial authority, and he is, therefore, immune from suit."
503 So.2d at 839 (citation omitted).
The rationale of Neighbors appears to have been that an action will not lie against a municipality for malicious prosecution because such an action requires proof of malice, and § 11-47-190 provides for an action against a municipality for the "neglect, carelessness, or unskillfulness" of its agents, not for their intentional torts: "To construe that language to include an action for malicious prosecution would be to expand the words beyond their normal meaning. This we decline to do." 384 So.2d at 114.
That rationale does not strictly apply to an action for false arrest, at least not one premised on negligence. Thus, Bahakel v. City of Birmingham may have extended the holding of Neighbors without doing so explicitly. Nevertheless, an action for false arrest does not lie under the facts of this case (and those of Bahakel and Boyette ) for the following reasons.
If the magistrate acted merely negligently, then he or she is protected by judicial immunity. The city could be liable only by respondeat superior, and if the agent is not liable, the principal cannot be held liable, either. United Steelworkers of America v. O'Neal, 437 So.2d 101 (Ala.1983); Larry Terry Contractors, Inc. v. Bogle, 404 So.2d 613 (Ala.1981). Although those cases, and the ones cited therein, concerned instances in which a jury found the agent not liable, we hold that the same principle should apply here. If the judicial officer cannot be held liable as a matter of public policy for negligent acts, similar considerations of public policy dictate that the municipality *166 itself cannot be held liable.[2]
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES and ADAMS, JJ., dissent.
ADAMS, Justice (dissenting).
The majority opinion concludes that "[i]f the judicial officer cannot be held liable as a matter of public policy for negligent acts, similar considerations of public policy dictate that the municipality itself cannot be held liable." Because this conclusion seriously erodes the intent of Ala.Code 1975, § 11-47-190, I must respectfully dissent.
The liability of municipalities for the neglect, carelessness, or unskillfulness of its agents, officers, or employees is statutorily based on § 11-47-190. That section provides, in part:
§ 11-47-190. When municipality liable; joint liability of other persons or corporations.
"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfullness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty...."
(Emphasis added.)
In Bahakel v. City of Birmingham, 427 So.2d 143 (Ala.1983) ("Bahakel I"), an opinion that I authored, the majority refused to recognize a cause of action for "negligent prosecution" when determining the liability of a municiaplity. However, we specifically stated that whether a plaintiff could maintain a negligence-based action for an unlawful arrest, and thereby circumvent the principle that a municipality is not liable for false arrest or malicious prosecutions, was a question that we declined to answer based on the facts of that case. The plaintiff's theory of his case was characterized as "negligent prosecution," and we held that the municipality was not liable for "negligent prosecution" and remanded the issue of the individual liability of the magistrate.
Summary judgment in favor of the magistrate was later affirmed in Bahakel v. Tate, 503 So.2d 837 (Ala.1987) ("Bahakel II"). In Bahakel II, we held that the magistrate was entitled to limited judicial immunity.
The facts in Bahakel I and the issue of judicial immunity present in Bahakel II are clearly distinguishable from the facts and issues in the instant case.
In Bahakel I and Bahakel II, the magistrate received information from an individual requesting a warrant for Bahakel's arrest. Based on the false information given to him, the magistrate issued a warrant for Bahakel's arrest. The magistrate in no way negligently, carelessly, or unskillfully performed his duties. The wrong individual was arrested merely because false information was provided to the magistrate.
In the instant case, Ms. Vining received information from an individual requesting a warrant for "Carrie J. Gore." Gore had allegedly presented a worthless check drawn on insufficient funds. The information given to Ms. Vining was correct. Vining used the computer information available to her and obtained an address for "Carrie Gore." She failed, however, to compare the computer information with the information appearing on the check, and the wrong individual was arrested.
A clear and distinguishing factor between the instant case and the Bahakel cases is that in the Bahakel cases there were insufficient facts to show neglect, *167 carelessness, or unskillfullness on the part of the magistrate. The magistrate accurately performed his duties in the Bahakel cases. However, in the present case, there was ample evidence indicating neglect, carelessness, or unskillfulness on the part of the magistrate to allow the facts to be presented to a jury.
Moreover, under the majority's analysis, a plaintiff could never bring an action for the "neglect, carelessness, or unskillfulness" of a municipal employee arising out of an unlawful arrest. This "carte blanche" immunity was not the intent of the Bahakel cases and is clearly contrary to § 11-47-190. Therefore, under the facts of the present case, I would conclude that summary judgment was improper on Gore's claim alleging neglect, carelessness, or unskillfullness.
The majority's analysis is flawed for another, more critical, reason. In the instant case, Gore sought damages only against the municipality under § 11-47-190 for the neglect, carelessness, or unskillfulness of Ms. Vining. Vining was not sued individually; therefore, the doctrine of judicial immunity as espoused in Bahakel II should not even be an issue.
However, even if Vining had been sued individually, I have serious doubts whether the doctrine of judicial immunity would shield her from liability in this case. "Judicial immunity" has been defined as:
"The absolute protection from civil liability arising out of the discharge of judicial functions which every judge enjoys. Under the doctrine of judicial immunity, a judge is not subject to liability for any act committed within the exercise of his judicial function; the immunity is absolute in that it is applicable even if the actions of the judicial officer are taken in bad faith."
Black's Law Dictionary 761 (5th ed. 1979) (citing C.M. Clark Insurance Agency, Inc. v. Reed, 390 F.Supp. 1056 (S.D.Tex.1975)).
The common law doctrine of judicial immunity that shields judges from civil liability has long been acknowledged. Pickett v. Richardson, 223 Ala. 683, 138 So. 274 (1931); Broom v. Douglass, 175 Ala. 268, 57 So. 860 (1912). The leading modern case on judicial immunity is Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In Stump, the plaintiff sued a state judge under 42 U.S.C. § 1983 for approving her sterilization based solely upon her mother's petition. The Supreme Court enunciated a two-part test to determine whether an act was sufficiently "judicial" to warrant immunity. First, a judge is required to show that the questioned act was performed within his subject matter jurisdiction.[3] Second, the questioned act must have been a judicial function. Immunity will be granted only when the tests for both jurisdiction and judicial function are satisfied. Id. at 360, 98 S.Ct. at 1106-07.
Whether an act is judicial is determined by the character of the act and not by the character of the agent. Ex Parte Virginia, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1879). Where the law defines and prescribes the duties to be performed by an officer with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is characterized as ministerial and not judicial. However, where the act to be done involves the exercise of discretion or judgment, performance of that duty is a judicial act. Grider v. Tally, 77 Ala. 422 (1884); 46 Am.Jur.2d Judges § 83 (1969).
As early as 1884, in an action on the bond of a probate judge, this Court stated, with respect to the characterization of judicial and ministerial acts:

*168 "It is an unquestioned rule, founded on the public benefit, the necessity of maintaining the independence of the judiciary, and its untrammelled action in the administration of justice, that a judge can not be held to answer in a civil suit for doing, or omitting or refusing to do, an official act in the exercise of judicial power. His responsibility for the manner in which he discharges the high trusts committed to him is to the sovereignty from whom he derives his authority. It is, also, an undisputed rule, that an officer who is charged with the performance of ministerial duties, is amenable to the law for his conduct, and is liable to any party specially injured by his acts of misfeasance or nonfeasance. When the law assigns to a judicial officer the performance of ministerial acts, he is as responsible for the manner in which he performs them, or for neglecting or refusing to perform them, as if no judicial functions were intrusted to him. The boundary of his judicial character is the line that marks and defines his exemption from civil liability.
". . . .
"Judicial power is authority, vested in some court, officer or person, to hear and determine, when the rights of persons or property, or the propriety of doing an act, are the subject matter of adjudication. Official action, the result of judgment or discretion, is a judicial act. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act."
Grider, 77 Ala. at 424-25. See also Broom v. Douglass, 175 Ala. 268, 57 So. 860 (1912) (Mayfield, J., dissenting).[4]
For the foregoing reasons, I would conclude that Ms. Vining's act in the instant case was ministerial in nature. Therefore, if Vining were sued individually, she would not be entitled to judicial immunity.
For the foregoing reasons, I dissent.
JONES, J., concurs.
NOTES
[1] A computer printout in the record, which is dated June 17, 1987, gives the name "Carrie S. Gore" along with the other information that Vining retrieved on March 30.
[2] If, on the other hand, the allegation is that the magistrate acted with malice, and so is not entitled to the good faith immunity given to judicial officers of courts of limited jurisdiction, the rationale of Neighbors would apply, precluding liability on the part of the municipality under § 11-47-190, because that section imposes liability on the city only for the neglect, carelessness, or unskillfulness of its agents, not for their intentional torts. There is no allegation here that Vining acted with malice.
[3] The Supreme Court of the United States first acknowledged the doctrine of judicial immunity in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). In Bradley, the Court noted that in determining the scope of immunity from civil liability for judicial acts, a distinction must be drawn between acting in excess of general jurisdiction and acting in a clear absence of all jurisdiction. The Bradley Court gave the following illustration: If a probate judge with jurisdiction over only wills and estates tried a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action. On the other hand, if a judge of a criminal court convicted a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. Id.
[4] "`The defendant having jurisdiction to issue warrants for the apprehension of persons for violating the provisions of the "act to prevent intemperance, pauperism, and crime" could not be made liable in a civil action for deciding that a warrant should issue on insufficient evidence. In determining whether there was sufficient evidence to authorize the issuing of a warrant, he acted judicially; and he is not liable while thus acting, even if he erred in judgment. But in making the warrant and delivering it to the officer he acted ministerially. "Where ministerial duty is violated the officer, although for most purposes a judge, is still civilly liable for such misconduct."'" Broom v. Douglass, 175 Ala. at 287-88, 57 So. at 867 (Mayfield, J., dissenting) (quoting Blythe v. Tompkins, 2 Abb.Prac. (N.Y.) 472) (citations omitted) (emphasis original).