The majority opinion concludes that "[i]f the judicial officer cannot be held liable as a matter of public policy for negligent acts, similar considerations of public policy dictate that the municipality itself cannot be held liable." Because this conclusion seriously erodes the intent of Ala. Code 1975, § 11-47-190, I must respectfully dissent.
The liability of municipalities for the neglect, carelessness, or unskillfulness of its agents, officers, or employees is statutorily based on § 11-47-190. That section provides, in part:
 § 11-47-190. When municipality liable; joint liability of other persons or corporations.
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty. . . ."
(Emphasis added.)
In Bahakel v. City of Birmingham, 427 So.2d 143 (Ala. 1983) ("Bahakel I"), an opinion that I authored, the majority refused to recognize a cause of action for "negligent prosecution" when determining the liability of a municipality. However, we specifically stated that whether a plaintiff could maintain a negligence-based action for an unlawful arrest, and thereby circumvent the principle that a municipality is not liable for false arrest or malicious prosecutions, was a question that we declined to answer based on the facts of that case. The plaintiff's theory of his case was characterized as "negligent prosecution," and we held that the municipality was not liable for "negligent prosecution" and remanded the issue of the individual liability of the magistrate.
Summary judgment in favor of the magistrate was later affirmed in Bahakel v. Tate, 503 So.2d 837 (Ala. 1987) ("Bahakel II"). In Bahakel II, we held that the magistrate was entitled to limited judicial immunity.
The facts in Bahakel I and the issue of judicial immunity present in Bahakel II are clearly distinguishable from the facts and issues in the instant case.
In Bahakel I and Bahakel II, the magistrate received information from an individual requesting a warrant for Bahakel's arrest. Based on the false information given to him, the magistrate issued a warrant for Bahakel's arrest. The magistrate in no way negligently, carelessly, or unskillfully performed his duties. The wrong individual was arrested merely because false information was provided to the magistrate.
In the instant case, Ms. Vining received information from an individual requesting a warrant for "Carrie J. Gore." Gore had allegedly presented a worthless check drawn on insufficient funds. The information given to Ms. Vining wascorrect. Vining used the computer information available to her and obtained an address for "Carrie Gore." She failed, however, to compare the computer information with the information appearing on the check, and the wrong individual was arrested.
A clear and distinguishing factor between the instant case and the Bahakel cases is that in the Bahakel cases there were insufficient facts to show neglect, *Page 167 
carelessness, or unskillfulness on the part of the magistrate. The magistrate accurately performed his duties in theBahakel cases. However, in the present case, there was ample evidence indicating neglect, carelessness, or unskillfulness on the part of the magistrate to allow the facts to be presented to a jury.
Moreover, under the majority's analysis, a plaintiff couldnever bring an action for the "neglect, carelessness, or unskillfulness" of a municipal employee arising out of an unlawful arrest. This "carte blanche" immunity was not the intent of the Bahakel cases and is clearly contrary to §11-47-190. Therefore, under the facts of the present case, I would conclude that summary judgment was improper on Gore's claim alleging neglect, carelessness, or unskillfulness.
The majority's analysis is flawed for another, more critical, reason. In the instant case, Gore sought damages only against the municipality under § 11-47-190 for the neglect, carelessness, or unskillfulness of Ms. Vining. Vining was not sued individually; therefore, the doctrine of judicial immunity as espoused in Bahakel II should not even be an issue.
However, even if Vining had been sued individually, I have serious doubts whether the doctrine of judicial immunity would shield her from liability in this case. "Judicial immunity" has been defined as:
 "The absolute protection from civil liability arising out of the discharge of judicial functions which every judge enjoys. Under the doctrine of judicial immunity, a judge is not subject to liability for any act committed within the exercise of his judicial function; the immunity is absolute in that it is applicable even if the actions of the judicial officer are taken in bad faith."
Black's Law Dictionary 761 (5th ed. 1979) (citing C.M. ClarkInsurance Agency, Inc. v. Reed, 390 F. Supp. 1056 (S.D.Tex. 1975)).
The common law doctrine of judicial immunity that shields judges from civil liability has long been acknowledged.Pickett v. Richardson, 223 Ala. 683, 138 So. 274 (1931); Broomv. Douglass, 175 Ala. 268, 57 So. 860 (1912). The leading modern case on judicial immunity is Stump v. Sparkman,435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In Stump, the plaintiff sued a state judge under 42 U.S.C. § 1983 for approving her sterilization based solely upon her mother's petition. The Supreme Court enunciated a two-part test to determine whether an act was sufficiently "judicial" to warrant immunity. First, a judge is required to show that the questioned act was performed within his subject matter jurisdiction.[3] Second, the questioned act must have been a judicial function. Immunity will be granted only when the tests for both jurisdiction and judicial function are satisfied. Id.
at 360, 98 S.Ct. at 1106-07.
Whether an act is judicial is determined by the character of the act and not by the character of the agent. Ex ParteVirginia, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1879). Where the law defines and prescribes the duties to be performed by an officer with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is characterized as ministerial and not judicial. However, where the act to be done involves the exercise of discretion or judgment, performance of that duty is a judicial act. Grider v.Tally, 77 Ala. 422 (1884); 46 Am.Jur.2d Judges § 83 (1969).
As early as 1884, in an action on the bond of a probate judge, this Court stated, with respect to the characterization of judicial and ministerial acts: *Page 168 
 "It is an unquestioned rule, founded on the public benefit, the necessity of maintaining the independence of the judiciary, and its untrammelled action in the administration of justice, that a judge can not be held to answer in a civil suit for doing, or omitting or refusing to do, an official act in the exercise of judicial power. His responsibility for the manner in which he discharges the high trusts committed to him is to the sovereignty from whom he derives his authority. It is, also, an undisputed rule, that an officer who is charged with the performance of ministerial duties, is amenable to the law for his conduct, and is liable to any party specially injured by his acts of misfeasance or nonfeasance. When the law assigns to a judicial officer the performance of ministerial acts, he is as responsible for the manner in which he performs them, or for neglecting or refusing to perform them, as if no judicial functions were intrusted to him. The boundary of his judicial character is the line that marks and defines his exemption from civil liability.
". . . .
 "Judicial power is authority, vested in some court, officer or person, to hear and determine, when the rights of persons or property, or the propriety of doing an act, are the subject matter of adjudication. Official action, the result of judgment or discretion, is a judicial act. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act."
Grider, 77 Ala. at 424-25. See also Broom v. Douglass, 175 Ala. 268,57 So. 860 (1912) (Mayfield, J., dissenting).[4]
For the foregoing reasons, I would conclude that Ms. Vining's act in the instant case was ministerial in nature. Therefore, if Vining were sued individually, she would not be entitled to judicial immunity.
For the foregoing reasons, I dissent.
JONES, J., concurs.
[3] The Supreme Court of the United States first acknowledged the doctrine of judicial immunity in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). In Bradley, the Court noted that in determining the scope of immunity from civil liability for judicial acts, a distinction must be drawn between acting in excess of general jurisdiction and acting in a clear absence of all jurisdiction. The Bradley Court gave the following illustration: If a probate judge with jurisdiction over only wills and estates tried a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action. On the other hand, if a judge of a criminal court convicted a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. Id.
[4] " 'The defendant having jurisdiction to issue warrants for the apprehension of persons for violating the provisions of the "act to prevent intemperance, pauperism, and crime" could not be made liable in a civil action for deciding that a warrant should issue on insufficient evidence. In determining whether there was sufficient evidence to authorize the issuing of a warrant, he acted judicially; and he is not liable while thus acting, even if he erred in judgment. But in making the warrant and delivering it to the officer he acted ministerially. "Whereministerial duty is violated the officer, although for most purposes a judge, is still civilly liable for such misconduct." ' " Broom v. Douglass, 175 Ala. at 287-88, 57 So. at 867
(Mayfield, J., dissenting) (quoting Blythe v. Tompkins, 2 Abb. Prac. (N.Y.) 472) (citations omitted) (emphasis original).